## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ~~In re:~~ | ~~Chapter 11~~ |
| LIFESIZE, INC., | Case No. 23-50038 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

### ~~INTERIM~~FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, AND (V) MODIFYING THE AUTOMATIC STAY~~, AND (VI) SCHEDULING A FINAL HEARING~~

Upon the motion (the "**DIP Motion**") dated May 16, 2023, of the above-captioned debtors and debtors-in-possession (the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"); Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rules 2002-1, 4001-1, and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), for entry of ~~an interim~~ a final order (the "~~**Interim**~~**Final** Order") authorizing the Debtors to, among other things:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  Lifesize, Inc. (5803); SL Midco 1, LLC (6980), SL Midco 2, LLC (9192); Serenova, LLC (9208); Telstrat, LLC (5255); LO Platform Midco, Inc. (5738); Serenova WFM, Inc. (2823); and Light Blue Optics, Inc. (7669).  The Debtors' service address is 216 West Village Blvd., Suite 102, Laredo, TX 78041.

(i)     Obtain senior secured, super priority, debtor-in-possession financing in the aggregate principal amount of up to $5,000,000 (the "**DIP Financing**") pursuant to the terms and conditions of the DIP Credit Documents (as defined below), the *Interim Order*, *(I) Authorizing the Debtors to Obtain Post-Petition Secured Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 36] (the "**Interim Order**").[2] and the this Final Order (as defined below);

(ii)    Enter into the (a) Superpriority Secured Debtor-In-Possession Credit Facility Term Sheet (the "**DIP Term Sheet**"), substantially in the form attached as **Exhibit A** hereto between the Debtors, as borrower, and FIRST-CITIZENS BANK & TRUST COMPANY (successor by purchase to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bridge Bank, N.A. (as successor to Silicon Valley Bank)) ("**SVB**"), as lender and agent (in each such capacities, the "**DIP Lender**" and "**DIP Agent**") and (b) all other credit documents (together with the DIP Term Sheet, the "**DIP Credit Documents**");

(iii)   Borrow, on an interim basis, pursuant to the DIP Credit Documents and this Interim Order, post-petition financing in an aggregate principal amount of up to $1,500,000 (the "**Interim DIP Loan**") and obtain other financial accommodations from the DIP Agent pursuant to the DIP Term Sheet, the other DIP Credit Documents, and the Interim Order;**[Reserved]**:

---

[2] Pursuant to the Interim Order, the Debtors were granted authority to (i) enter into the Superpriority Secured Debtor-In-Possession Credit Facility Term Sheet (the "**DIP Term Sheet**"), substantially in the form attached as Exhibit A thereto between the Debtors, as borrower, and FIRST-CITIZENS BANK & TRUST COMPANY (successor by purchase to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bridge Bank, N.A. (as successor to Silicon Valley Bank)) ("**SVB**"), as lender and agent (in each such capacities, the "**DIP Lender**" and "**DIP Agent**") and (ii) borrow, on an interim basis, pursuant to the DIP Credit Documents, post-petition financing in an aggregate principal amount of up to $1,500,000 (the "**Interim DIP Loan**").

(iv)    Borrow, on a final basis, pursuant to the DIP Credit Documents and ~~the~~this Final Order ~~(as defined below)~~, post-petition financing in an aggregate principal amount of up to $3,500,000 (for a total of $5,000,000), plus the DIP Roll-Up Loans (as defined below) (the "**DIP Loan**," together with the Interim DIP Loan, the "**DIP Facility**") and obtain other financial accommodations from the DIP Agent pursuant to the DIP Term Sheet, the other DIP Credit Documents, and ~~the~~this Final Order ~~(as defined below)~~;

(v)    Authorize the Debtors to execute and deliver the ~~DIP Term Sheet and the other~~ DIP Credit Documents;

(vi)    Grant to the DIP Agent allowed super-priority administrative expense claims in the Chapter 11 Cases and any Successor Cases (as defined below) for the DIP Financing and all obligations of the Debtors owing under the DIP Credit Documents and the DIP Facility (collectively, and including all "DIP Obligations" of the Debtors as defined and described in the DIP Term Sheet, the "**DIP Obligations**") subject to the priorities set forth herein;

(vii)    Grant to the DIP Agent automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which liens shall be subject to the priorities set forth herein;

(viii)    Use the proceeds of the DIP Financing in accordance with the DIP Term Sheet, the DIP Credit Documents, and this ~~Interim~~Final Order, in all cases in accordance with the Approved Budget (as defined in the DIP Term Sheet), an initial copy of which ~~is~~was attached ~~hereto~~to the Interim Order as Exhibit B, and as otherwise provided in the DIP Credit Documents;

3

(ix) Use any Prepetition Collateral (as defined below), including Cash Collateral, and provide adequate protection to the parties that may have an interest in such Prepetition Collateral, including Cash Collateral, for any diminution in value ("**Diminution in Value**") of their interests therein;

(x) Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Credit Documents and this ~~Interim~~Final Order;

(xi) ~~Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing~~**[Reserved]**; and

(xii) Waive, to the extent applicable, any stay of the immediate effectiveness of this ~~Interim~~Final Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that this ~~Interim~~Final Order shall be immediately effective upon its entry on the docket of the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").

The Court having considered the DIP Motion, the *Declaration of Marc Bilbao in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), the exhibits attached thereto, the DIP Term Sheet, and the evidence submitted or adduced and the arguments of counsel made at the hearing on ~~this~~the Interim Order (the "**Interim Hearing**") and at the hearing on this Final Order (if any) (the "**Final Hearing**," and together with the Interim Hearing, the "**Hearings**"); and notice of the DIP Motion and the ~~Interim Hearing~~Hearings having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and Local Rules 2002-1 and 4001; and the ~~Interim Hearing~~Hearings having been held and concluded; and it appearing that granting the relief requested in the DIP Motion on ~~an interim~~a final basis ~~is~~

4

~~necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing, and~~ is otherwise fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, and is essential for the preservation of the value of the Debtors' assets; and all objections, if any, to the entry of this ~~Interim~~Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED that:**[~~2~~3]

A.   **Petition Date**.   On May 16, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with this Court.

B.   **Jurisdiction and Venue**.   This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.   Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   This Court may enter a final order consistent with Article III of the United States Constitution.

C.   **Committee Formation**.   A statutory committee of unsecured creditors (the "**Committee**") has not yet been appointed in the Chapter 11 Cases.

D.   **Notice**.   Notice of the ~~Interim Hearing~~Hearings and notice of DIP Motion have been provided by the Debtors to (i) the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"); (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Debtors' Prepetition Lenders and their counsel;

---

[~~2~~ 3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

(iv) the Prepetition 1L Agent (as defined herein) and its counsel; (v) the parties holding secured claims against the Debtors; (vi) the DIP Agent and its counsel; (vii) the United States Attorney's Office for the Southern District of Texas; (viii) the Internal Revenue Service; (ix) the United States Securities and Exchange Commission; (x) the state attorneys general for states in which the Debtors conduct business; (xi) governmental agencies having a regulatory or statutory interest in these cases; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d).   Under the circumstances, such notice of the ~~Interim Hearing~~Hearings and the DIP Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), (c), and (d), and the Local Rules.

E. **Debtors' Stipulations**.   After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 12 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs E(i) through E(~~viii~~ix) below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

(i) *Prepetition Credit Agreement*.   Pursuant to that certain Credit Agreement dated as of March 2, 2020 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition 1L Credit Agreement**" and, together with all other agreements, documents, and instruments executed and/or delivered in connection therewith, as all of the same have been amended, supplemented, or otherwise modified at any time prior to the Petition Date, the "**Prepetition 1L Credit Documents**"), by and between Lifesize, Inc. ("**Lifesize**"), SL MIDCO 1, LLC (f/k/a MARLIN-SL MIDCO 1, LLC), a Delaware limited liability company ("**Holdings**"); SL MIDCO 2, LLC (f/k/a MARLIN-SL MIDCO 2, LLC), a Delaware limited

6

liability company ("**Midco 2**"); SERENOVA, LLC, a Delaware limited liability company ("**Serenova**"); and LO PLATFORM MIDCO, INC., a Delaware corporation ("**LO Platform**"); the lenders from time to time party thereto, including SVB (the "**Prepetition 1L Lenders**"); and SVB in its capacity as administrative agent and collateral agent for the Prepetition 1L Lenders (the "**Prepetition 1L Agent**"), the Debtors incurred indebtedness to SVB (such facility, the "**Prepetition Facility**").

(ii) *Intercreditor Agreements.* Pursuant to (i) that certain Intercreditor Agreement dated as of March 2, 2020, by and among Holdings, Midco 2, Serenova, and Lifesize, the guarantors party thereto, SVB, in its capacity as First Lien Representative, and SVB Innovation Credit Fund VIII, L.P. (f/k/a Westriver Innovation Lending Fund VIII, L.P.) ("**SVB Capital**") in its capacity as Second Lien Representative, and each additional representative from time to time party thereto (the "**SVB-SVB Capital Intercreditor Agreement**") (ii) that certain Subordination Agreement dated as of March 2, 2020, by and among the Prepetition 1L Agent, SVB Capital, in its capacity as the administrative agent for certain 2L lenders, and each of the holders of the subordinated notes signatory thereto, and acknowledged by Midco 2 and Holdings (the "**2020 Subordination Agreement**"; and (iii) that certain Subordination Agreement dated as of October 31, 2022 by and among the Prepetition 1L Agent, SVB Capital, in its capacity as the administrative agent for certain 2L Lenders, and MARLIN LO HOLDINGS LP, MARLIN LO TOPCO, INC., and MARLIN LO TOPCO II, INC. in connection with the Sponsor Credit Agreement (the "**ERC Subordination Agreement**", and together with the SVB-SVB Capital Intercreditor Agreement and the 2020 Subordination Agreement, collectively, the "**Intercreditor Agreements**"), the Debtors' prepetition lenders agreed on the relative priority of the liens

granted to such prepetition lenders and on the order of distribution of collateral or proceeds thereof, all as more particularly set forth in the Intercreditor Agreements.

(iii)     For purposes herein, the "**Prepetition Junior Secured Parties**" are, collectively, (a)(i) SVB Capital, as administrative agent and as a lender for under that certain Credit Agreement dated as of March 2, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition 2L Credit Agreement**"), and (ii) the lenders party thereto, and (b) Marlin LO Holdings, LP, Marlin LO Topco, Inc., and Marlin LO TOPCO II, Inc. pursuant to that certain Subordinated Secured Credit Agreement dated as of October 31, 2022 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Sponsor Credit Agreement**").  The obligations under the Sponsor Credit Agreement in a principal amount not to exceed $4,000,000 are secured by a senior lien on certain employee retention tax credits and related assets, to the extent permitted by applicable non-bankruptcy law (the "**ERC Proceeds**").

(iv)     As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Facility was not less than $59,712,466.00, plus interest, fees and all other obligations owing under the Prepetition Facility (the "**Prepetition Obligations**").

(v)     As set forth more fully in the Prepetition 1L Credit Agreement and the DIP Motion, prior to the Petition Date, the Debtors granted to SVB first-priority liens (the "**Prepetition Liens**") on certain of the Debtors' assets, including, but not limited to, all goods, accounts, equipment, inventory, proceeds of intellectual property, contract rights, leases, general intangibles, commercial tort claims, cash, deposit accounts, and letters of credit (collectively, the "**Prepetition Collateral**").

(vi)     The Debtors acknowledge that, as of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly

DOCS_SF:9757 DOCS_NY:47006.2 52624/002

perfected and were granted to, or for the benefit of, SVB for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition Loan Agreement (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date, the "**Permitted Liens**"); (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the Prepetition Loan Agreement; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against SVB or Prepetition 1L Agent, or any of its or their affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Obligations; the priority of the Debtors' obligations thereunder; and the validity, extent, and priority of the liens securing the Prepetition Obligations; and (g) the Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

DOCS_SF:109757 DOCS_NY:47006.2 52624/002

(vii)   **Permitted Liens**.  Nothing herein or in the Interim Order shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.   Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors or a Committee (if appointed) to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien and/or security interests.   For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Lien.   Any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Facility, DIP Liens, and DIP Collateral as such claims had with respect to the Prepetition Liens in the Prepetition Collateral and the DIP Collateral.

(viii)   **No Control**.  SVB does not control the Debtors or their properties or operations, does not have authority to determine the manner in which any of the Debtors' operations are conducted, and are not control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this the Interim Order, the this Final Order, the DIP Credit Documents, and/or the Prepetition 1L Credit Documents.

(ix)   **Cash Collateral**.  All of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, whether subject to control agreements or otherwise, and any amount generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the

foregoing, whether existing on the Petition Date or thereafter, constitute the Cash Collateral of SVB.

  F.  **Findings Regarding the DIP Financing**.

    (i)  **Need for DIP Financing and to Use Cash Collateral**.  An immediate need exists for the Debtors to obtain funds from the ~~Interim~~ DIP Loan and to use Cash Collateral in order to continue operations, fund payroll and operating expenses, administer and preserve the value of their estates ~~pending the Final Hearing~~.  The ability of the Debtors to finance their operations through the incurrence of the ~~Interim~~ DIP Loan and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors' estates, to maximize the value of the Debtors' assets for the benefit of their creditors, and to avoid immediate and irreparable harm to the Debtors, their estates, and their creditors.

    (ii)  **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense or (b) credit for money borrowed secured by a lien on property of the estate on more favorable terms and conditions than those provided in the DIP Term Sheet and this ~~Interim~~<u>Final</u> Order.  The Debtors are unable to obtain credit for borrowed money without granting to the DIP Agent and DIP Lender the DIP Protections (as defined below).

  G.  **Adequate Protection**.  SVB is entitled to receive adequate protection to the extent of any Diminution in Value of its interests in the Prepetition Collateral.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, SVB will receive (i) adequate protection liens and super-priority claims, as more fully set forth in paragraph 7 herein; and (ii) payment of reasonable and documented legal fees and out-of-pocket expenses, whether arising before or after the Petition Date, as more fully set forth in paragraph 7 herein.

H.    **Sections 506(c) and 552(b)**.  ~~Subject to and effective~~ Effective upon entry of ~~the~~this Final Order, the Debtors shall be deemed to have waived the provisions of section 506(c) of the Bankruptcy Code and any "equities of the case" exception under section 552(b) of the Bankruptcy Code as part of the DIP Facility.  Further, ~~subject to and~~ effective upon entry of ~~the~~this Final Order, no expenses of administration of the Chapter 11 Cases or any other proceedings superseding or related to the foregoing ("**Successor Cases**") shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Agent, and no consent shall be implied from any action, inaction, or acquiescence by the DIP Agent.

I.    **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Credit Documents) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Term Sheet~~and this~~, the Interim Order, this Final Order, and in accordance with the Approved Budget.

J.    **Application of Proceeds of DIP Collateral**.  All proceeds of any sale or other disposition of the DIP Collateral (as defined below) shall be applied in accordance with the Approved Budget and the terms and conditions of the DIP Credit Documents.

K.    **Roll-Up of Prepetition Obligations**.  ~~Upon entry of the Final Order, without~~Without any further action by the Debtors or any other party, $15,000,000 of the outstanding Prepetition Obligations shall constitute DIP Obligations under and as further described in the DIP Term Sheet (the "**DIP Roll-Up Loans**").  The replacement and refinancing (or "roll-up") of the DIP Roll-Up Loans shall be authorized as compensation for, in

12

consideration for, and solely on account of the agreement of SVB to fund amounts and provide other consideration to the Debtors under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  SVB would not otherwise consent to the use of their Cash Collateral and would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-‐Up Loans in the DIP Obligations.  Moreover, the replacement and refinancing of the Prepetition Loan into DIP Obligations will enable the Debtors to obtain urgently needed financing to administer these Chapter 11 Cases and fund their operations.  Because the DIP Roll-Up Loans are subject to the reservation of rights in paragraph 12 below, they will not prejudice the right of any other party in interest.

L.      **Effect of Reversal, Good Faith**.  The DIP Agent has indicated a willingness to provide financing to the Debtors in accordance with the DIP Term Sheet, the Interim Order, and this ~~Interim~~Final Order, and provided that the DIP Obligations, DIP Liens, and other protections granted by ~~this~~the Interim Order, this Final Order and the DIP Credit Documents will not be affected by any subsequent reversal or modification of this ~~Interim~~Final Order as provided in section 364(e) of the Bankruptcy Code.  The DIP Agent has acted in good faith in agreeing to provide the DIP Financing approved by ~~this~~the Interim Order, this Final Order, and the DIP Agent's claims, superpriority claims, security interests, and liens and other protections granted pursuant to ~~this~~the Interim Order, this Final Order, and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

M.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)      The terms and conditions of the DIP Facility and the DIP Credit Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best

13

available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)    the DIP Credit Documents and use of Cash Collateral were negotiated in good faith and at arm's length between the Debtors and the DIP Agent; and

(iii)    the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Agent and DIP Lender are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

N.    **Relief Essential; Best Interest; Good Cause for Immediate Entry**.  Good cause has been shown for the relief requested in the DIP Motion (and as provided in this ~~Interim~~Final Order) and such relief is necessary, essential, and appropriate for the preservation of the Debtors' assets, business, and property.  It is in the best interest of the Debtors' estates to be allowed to enter into and continue to abide by the DIP Facility and the DIP Credit Documents contemplated by the DIP Term Sheet.

**NOW, THEREFORE**, based upon the foregoing findings, and upon consideration of the DIP Motion and the record made before this Court with respect to the DIP Motion, including the record created during the ~~Interim Hearing~~Hearings, and with the consent of the Debtors, the DIP Agent, and the Prepetition 1L Agent to the form and entry of this ~~Interim~~Final Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND DECREED:**

1.    **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Term Sheet.  Any objections to the

DIP Motion with respect to entry of this ~~Interim~~Final Order to the extent not withdrawn, waived, or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2. **DIP Credit Documents**.

(a) **Approval of Entry into DIP Credit Documents**.  The DIP Facility, including ~~(subject to entry of the Final Order)~~ the DIP Roll-Up Loans, is hereby approved.  The Debtors are authorized and empowered to execute and deliver the DIP Credit Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of ~~this~~the Interim Order, this Final Order, and the DIP Credit Documents, and to execute and deliver all instruments and documents that may be required or necessary for the performance by the Debtors under the DIP Credit Documents and the creation and perfection of the DIP Liens described in and provided for by ~~this~~the Interim Order, this Final Order, and the DIP Credit Documents.  The Debtors are hereby authorized to use Cash Collateral pursuant to the terms of ~~this~~the Interim Order, this Final Order and the Approved Budget.  The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, indemnities, and other amounts described in the DIP Term Sheet and all other DIP Credit Documents as such become due, including, without limitation, reasonable attorneys' fees and disbursements as provided for in the DIP Term Sheet, which amounts shall not otherwise be subject to approval of this Court or required to comply with U.S. Trustee fee guidelines.

(b) ~~**Interim Authorization to Borrow/and or Guarantee**.  To enable them to continue to preserve the value of their estates during the period prior to entry of the Final Order (the "**Interim Period**") and subject to the terms and conditions of this Interim Order, upon the execution of the DIP Term Sheet and the other DIP Credit Documents, the Debtors are~~

15

~~hereby authorized to borrow the Interim DIP Loan up to a total committed amount of $1,500,000 under the DIP Credit Documents~~**[Reserved]**.

(c)     **Conditions Precedent**.  The DIP Agent shall have no obligation to make any loan or advance under the DIP Term Sheet ~~during the Interim Period~~ unless the conditions precedent to making such loan under the DIP Term Sheet have been satisfied in full or waived in writing (which may be via email) by the DIP Agent in its sole discretion.

(d)     **DIP Liens**.     In order to secure the DIP Obligations~~, effectively immediately upon entry of this Interim Order~~ and effective as of the Petition Date, pursuant to sections 361, 362, 364(c)(2), and 364(c)(3) of the Bankruptcy Code, the DIP Agent was granted pursuant to the Interim Order and is hereby in this Final Order granted continuing, valid, binding, enforceable, non-~~-~~avoidable, and automatically and properly perfected post-petition security interests in and liens on (collectively, the "**DIP Liens**") all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of the Debtors (the "**DIP Collateral**") and including (i) actions brought under section 549 of the Bankruptcy Code to recover any post-~~-~~petition transfer of DIP Collateral; (ii) ~~subject to entry of a Final Order,~~the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code) ("Avoidance Actions") ~~and the proceeds thereof~~; and (iii) ~~subject to entry of a Final Order,~~ the Debtors' rights under sections 506(c) and 550 of the Bankruptcy Code and the proceeds thereof.  Notwithstanding the foregoing, the DIP Collateral shall not include any contract or license under which the granting of the DIP Liens thereon would constitute a breach or termination thereof other than to the extent such breach or termination would be rendered

ineffective pursuant to applicable law (including applicable state law or the Bankruptcy Code) but shall, in any event, include the proceeds of such contracts and licenses.

(e) **DIP Lien Priority**.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, and non-avoidable, and the DIP Agent was granted in the Interim Order and pursuant to this Final Order shall have, (i) pursuant to section 364(c)(2) of the Bankruptcy Code, first-priority perfected security interests, liens, and mortgage on all DIP Collateral (subject only to the Carve Out and Permitted Liens) not subject to valid, perfected, enforceable, and non-avoidable security interests, liens, or mortgages in existence on the Petition Date; (ii) pursuant to section 364(c)(3) of the Bankruptcy Code, junior security interests, liens, and mortgages on all DIP Collateral that was subject to valid, perfected, enforceable, and non-avoidable security interests, liens, or mortgages in existence on the Petition Date or that is subject to valid Permitted Liens; and (iii) pursuant to section 364(d) of the Bankruptcy Code, priming security interests and liens on all of DIP Collateral (in all cases subject to the Carve-Out) that is subject to valid, perfected, enforceable, and non-avoidable security interests, liens, or mortgages arising under the Prepetition 1L Credit Agreement, the Prepetition 2L Credit Agreement, or any associated security documents, each effective as of the Petition Date.  Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in these Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in these Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of the Chapter 11 Cases or any Successor Cases.  The DIP Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided

and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(f) **Enforceable Obligations**.  The DIP Credit Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates, and any successors thereto and their creditors or representatives thereof, in accordance with their terms.

(g) **Protection of DIP Agent and Other Rights**.  From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Term Sheet, the Interim Order, and this Interim Final Order and in strict compliance with the Approved Budget (subject to any variances thereto permitted by the DIP Term Sheet).

(h) **Superpriority Administrative Claim Status**.  Upon entry of this The DIP Agent was granted pursuant to the Interim Order, the DIP Agent and is hereby granted, in this Final Order, effective as of the Petition Date and pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed super-priority administrative expense claim in the Chapter 11 Cases and any Successor Cases (collectively, the "**DIP Superpriority Claims**" and, together with the DIP Liens, the "**DIP Protections**") for all DIP Obligations:  (i) subject only to the Carve Out, having priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in these Chapter 11 Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (ii)

18

which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; *provided that* ~~pending entry of the Final Order~~, the DIP Superpriority Claim shall not be payable from the proceeds of Avoidance Actions.

3.  **Authorization to Use Proceeds of DIP Facility**.  Pursuant to the terms and conditions of this ~~Interim~~<u>Final</u> Order, the DIP Term Sheet, and the other DIP Credit Documents, and in accordance with the Approved Budget and the variances thereto set forth in the DIP Term Sheet, the Debtors are authorized to use the advances under the DIP Term Sheet during the period commencing immediately after the entry of ~~the Interim~~<u>this Final</u> Order and terminating upon the occurrence of an Event of Default (as defined below) and the termination of the DIP Term Sheet in accordance with its terms and subject to the provisions hereof.  The Debtors and the DIP Agent may agree in writing (which may be via email) to modify the Approved Budget in their discretion at any time that the DIP Financing remains outstanding.  Upon payment of any fees or costs payable in connection with the DIP Credit Documents, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable.

4.  **DIP Roll-Up Loans**.  ~~Upon entry of the Final Order, without~~<u>Without</u> any further action by the Debtors or any other party, and as a condition to the provision of liquidity under the DIP Facility, the DIP Roll-Up Loans shall be replaced and refinanced and shall constitute DIP Obligations.  The authorization of the DIP Roll-Up ~~Obligations~~<u>Loans</u> shall be subject to the reservation of rights set forth in paragraph 12 of this ~~Interim~~<u>Final</u> Order.  No provision of ~~the~~<u>this</u> Final Order authorizing the DIP Roll-Up ~~Obligations~~<u>Loans</u> shall adversely affect the Carve Out.

5.  **Authorization to Use Cash Collateral**.  Pursuant to the terms and conditions of this ~~Interim~~<u>Final</u> Order, the DIP Term Sheet, and the other DIP Credit Documents, and in

19

accordance with the Approved Budget and the variances thereto set forth in the DIP Term Sheet, the Debtors are authorized to use the advances under the DIP Term Sheet during the period commencing immediately after the entry of ~~the Interim~~this Final Order and terminating upon the occurrence of an Event of Default (as defined below) and the termination of the DIP Term Sheet in accordance with its terms and subject to the provisions hereof; *provided*, *however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely to pay expenses that the DIP Agent approves in writing (which may be via email) as critical to avoid immediate and irreparable harm (and solely to the extent provided for in the Approved Budget), and the Carve Out shall be funded following delivery of the Carve Out Notice (as defined herein) as provided in paragraph 8 of this ~~Interim~~Final Order.  Nothing in the Interim Order or this ~~Interim~~Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this ~~Interim~~Final Order, the DIP Term Sheet, and the other DIP Credit Documents, and in accordance with the Approved Budget.

6.      **Post-Petition Lien Perfection**.  This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent may, in their sole discretion, file such financing statements, mortgages, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy

20

Code in order to do so, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

The Debtors shall execute and deliver to the DIP Agent all such financing statements, mortgages, notices, and other documents as the DIP Agent may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the DIP Liens granted pursuant hereto.  The DIP Agent, in its sole discretion, may file a photocopy of this ~~Interim~~Final Order as a financing statement with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this ~~Interim~~Final Order.

7.  **Adequate Protection**.  SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) and the Prepetition Junior Secured Parties shall receive the following as adequate protection against any Diminution in Value of such parties' respective interests caused by the imposition of the automatic stay, each effective as of the Petition Date and as applicable to each party:

(a)  Pursuant to sections 361 and 363(e), SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) was granted in the Interim Order and is hereby granted continuing, valid, binding, enforceable, and perfected post-petition security interests in and liens on the DIP Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens shall be subject to the Carve Out as set forth in this ~~Interim~~Final Order and shall otherwise be junior to the DIP Liens.  ~~Subject to and effective~~Effective upon entry of the~~the~~this

21

Final Order, the Adequate Protection Liens shall be senior to all security interests in, liens on, or claims against any of the DIP Collateral other than the DIP Liens.

(b)     Except as provided herein or in the DIP Term Sheet, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases.  The Adequate Protection Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(c)     As further adequate protection of the interests of SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) against any Diminution in Value of such interests in the Prepetition Collateral, SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) was granted in the Interim Order and is hereby granted in this Final Order an allowed super-priority administrative expense claim in the Chapter 11 Cases and any Successor Cases under sections 503 and 507(b) of the Bankruptcy Code (the "**507(b) Claim**").

(d)     The 507(b) Claim shall be subject to the Carve Out as set forth in this Interim Final Order and shall otherwise be junior only to the DIP Superpriority Claims.  The 507(b) Claim shall have priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered

22

pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; *provided that* pending entry of the Final Order, the 507(b) Claim shall not be payable from the proceeds of the Avoidance Actions.

    (e)   The Debtors are authorized and directed to provide adequate protection to SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of reasonable and documented legal fees and out-of-pocket expenses incurred, whether arising before or after the Petition Date, without further order from this Court; *provided* that payment shall be made after at least ten (10) days' notice (which may be via email) of an invoice has been provided to the Debtors, the U.S. Trustee, and any Committee and only as to the portion that is not the subject of any timely objection limited to the issue of the reasonableness of the disputed fees and expenses. If an objection is timely asserted, this Court shall decide the allowed amount of any such fees or expenses. All such unpaid fees, costs, and expenses of the DIP Agent, including, without limitation all fees referred to in the DIP Credit Documents, shall constitute DIP Obligations and shall be secured by the DIP Collateral and afforded all priorities and protections afforded to the DIP Obligations under this~~the~~ Interim Order, this Final Order, and the other DIP Credit Documents.

    (f)   The Debtors are authorized and directed to provide adequate protection to SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) in the form of accrual of interest on the Prepetition Obligations at the non-default contractual rate specified in the Prepetition 1L Credit Documents and which interest shall be payable monthly in cash and otherwise in accordance with the terms of the Prepetition 1L Credit Documents.

23

(g) Notwithstanding any other provision hereof or in the Interim Order, the grant of adequate protection to SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) pursuant hereto is without prejudice to the right of SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent) to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

(h) As adequate protection to the Prepetition Junior Secured Parties, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration for the Prepetition Junior Secured Parties consenting to the Debtors' continuing to use of the Prepetition Junior Secured Parties' collateral, including Cash Collateral, the Prepetition Junior Secured Parties shall receive, *inter alia*, (a) replacement liens on DIP Collateral securing loans made on behalf of the Prepetition Junior Secured Parties, with such adequate protection liens being junior only to (i) the claims and liens of the Prepetition 1L Agent (including SVB's Adequate Protection Liens) and (ii) the claims and liens of the DIP Agent, and (b) a 507(b) Claim in the Chapter 11 Cases (junior in priority to the DIP Superpriority Claim and SVB's 507(b) Claim), in each case subject to the Carve-Out and in an amount equal to the aggregate Diminution in Value of its interests in such Prepetition Junior Secured Parties' collateral occurring on or after the Petition Date.   Notwithstanding the foregoing, the obligations under the Sponsor Credit Agreement shall continue to be secured by the ERC Proceeds and, with respect to such ERC Proceeds, senior to the DIP Superpriority Claim, the DIP Liens, the Carve-Out, and any adequate protection provided hereby.

8.      **Carve Out**.  Except as otherwise provided herein, the DIP Liens are subordinate only to the following (the "**Carve Out**"):  (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) ("**US Trustee Fees**"); (ii) fees payable to the Clerk of the Bankruptcy Court ("**Case Administration Fees**"); (iii) unpaid postpetition professional fees and expenses ("**Debtor Professional Fees**") payable to each legal or financial advisor retained by the Debtors, including the noticing agent (the "**Debtor Professionals**"), that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined herein), but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331, and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually allowed whether before or after the Termination Event); (iv) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "**Professional Fees**") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event, but subject to the aggregate amount(s) set forth in the Approved Budget (plus success fees or commissions payable to the Debtors' investment banker, Piper Sandler & Co., as approved by the Court; *provided*, that the payment of such success fees and commissions shall in all cases be subject to (x) the Approved Budget, and (y) the prior indefeasible repayment in cash of at least $12,500,000.00 of the outstanding balance of the DIP ~~Loans and the Prepetition 1L Obligations (to the extent that~~Facility (including, for the avoidance of doubt, the DIP Roll-Up ~~has not been approved at the time of payment)) and~~Loans), as ultimately allowed by the Court pursuant to sections 328, 330, 331, 503, and 1102 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually allowed before or after the Termination Event); (v) Professional Fees ultimately allowed by the Court pursuant to sections 328, 330, 331, and 503 of

25

the Bankruptcy Code or any order of the Court paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $100,000; (vi) in the event the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, reasonable fees, and expenses incurred by a duly-appointed trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000; (vii) amounts in an aggregate amount not to exceed $800,000.00 payable by the Debtors under any Court-approved key employee retention plan and subject to the Approved Budget (as approved, the "**KERP**"); *provided*, in the event of a prior indefeasible repayment in cash of at least $12,500,000.00 of the outstanding balance of the DIP Loans and the Prepetition 1L Obligations (to the extent thatFacility (including, for the avoidance of doubt, the DIP Roll-Up has not been approved at the time of paymentLoans), any remaining amount above $800,000 payable by the Debtors under the KERP up to $192,500.00; and (viii) accrued and unpaid obligations of the Debtors for postpetition payroll and employee-related taxes and amounts related to IBNR health-insurance reimbursement claims to the extent set forth in the Approved Budget.  So long as no Termination Event has occurred, the Debtors shall be authorized and directed to fund, on a weekly basis, into the trust account of the Debtors' bankruptcy counsel an amount equal to the budgeted amount for Professional Fees in accordance with the Approved Budget.

9.      For purposes of the foregoing, a Termination Event (as defined herein) shall occur upon the delivery of a "**Carve Out Notice**", which is written notice delivered by the DIP Agent to the Debtors and their counsel, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent (i) in connection with the repayment in full in cash of the DIP Obligations or (ii) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Notice."  Following delivery of a

Carve Out Notice, upon the funding of the Carve Out as of the date of the Carve Out Notice, the DIP Agent shall not have any further liability whatsoever for the Carve Out (including any amounts described in paragraph 8) or any subordination in respect thereof.  Any amounts owed under the Carve Out to Piper Sandler & Co. for success fees or commissions shall be paid solely from the proceeds of a sale of Debtors' assets approved by this Court, and not from the proceeds of ~~any~~the DIP ~~Loans~~Facility.

10.    Notwithstanding anything set forth herein or in the Interim Order, the Carve Out shall exclude any fees and expenses incurred in connection with initiating or prosecuting any claims, causes of action, adversary proceedings, or other litigation against the DIP Agent, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses, or other contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (i) that is in violation of, or a default under, any of the DIP Credit Documents, the Interim Order, or ~~the~~this Final DIP Order; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (a) the DIP Obligations, (b) the DIP Liens, or (c) any of the DIP Agent's rights under the DIP Credit Documents; or (iii) preventing, hindering, or delaying, whether directly or indirectly, the DIP Agent's assertion or enforcement of their liens or security interests or realization upon any DIP Collateral.

11.    **Payment of Compensation**.   Nothing herein or in the Interim Order shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors or the Committee or shall affect the rights of the DIP Agent or Prepetition 1L Agent to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Approved Budget.   Further, nothing herein or in the Interim Order

DOCS_SF:109757.2 52624/002

shall be construed to obligate the DIP Agent to pay any professional fees or to assure that the Debtors have sufficient funds on hand to pay any professional fees.

12. **Effect of Stipulations**.

(a) Generally.  The admissions, stipulations, agreements, releases, and waivers set forth in ~~this~~the Interim Order and this Final Order (collectively, the "**Prepetition Lien and Claim Stipulations**") are and shall be binding on the Debtors.  In addition, the Prepetition Lien and Claim Stipulations shall be binding on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including a Committee (if appointed), unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 12) challenging the Prepetition Lien and Claim Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than (a) sixty (60) days from the date of formation of a Committee (if appointed) or (b) seventy-five (75) days following the Petition Date for any other party in interest with requisite standing (the "**Challenge Deadline**"), as such applicable date may be extended in writing from time to time in the sole discretion of SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly

commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.  Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Chapter 11 Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (i) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Chapter 11 Cases to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause; and (ii) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee may stand in the shoes of the Committee in such Challenge.

(b)       Binding Effect.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Stipulations, then, without further notice, motion, or application to, order of, or hearing before this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Stipulations shall, pursuant to this ~~Interim~~Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases and their successors and assigns, and in any Successor Cases for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein or in the Interim Order, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above, except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly

DOCS_NY 47577DOCS_SF 6006.2 52624/002

the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above.  To the extent any such Challenge proceeding is timely and properly commenced, ~~the~~SVB (including in its capacities as Prepetition 1L Lender and Prepetition 1L Agent ~~and Prepetition Lender~~) shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 12, the Court may fashion any appropriate remedy.  None of the proceeds of the DIP ~~Loans~~Facility or Cash Collateral shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against (a) the Prepetition 1L Agent and the Prepetition 1L Lenders or (b) the Prepetition Junior Secured Parties, except up to the amount of $25,000 for an investigation by any Committee.

13.    **Section 506(c) Claims**.  Nothing contained in ~~this~~the Interim Order or this Final Order shall be deemed a consent by the DIP Agent to any charge, lien, assessment, or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.  ~~Upon entry of the Final Order, no~~No costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time may be charged against the DIP Agent or any of their claims or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

14.    **Collateral Rights**.  Unless the DIP Agent has provided its prior written consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of

an order approving indebtedness described in subparagraph (a) below) and all commitments to lend have terminated:

(a)     The Debtors shall not seek entry, in these Chapter 11 Cases, or in any Successor Cases, of any order that authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status that is senior or *pari passu* to those granted to the DIP Agent pursuant to this ~~Interim~~Final Order, unless such credit or indebtedness is sufficient to pay all of the DIP Obligations in full in cash; and

(b)     The Debtors shall not consent to relief from the automatic stay by any persons other than the DIP Agent to proceed against any DIP Collateral having a fair market value in excess of $20,000 without the express written consent of the DIP Agent.

15.     **Termination Event**.  All DIP Obligations of the Debtors to the DIP Agent shall be immediately due and payable, and the Debtors' authority to use Cash Collateral (unless extended by agreement of the applicable lenders) and the proceeds of the DIP Facility shall cease, both on the date that is the earliest to occur of:  (i) the Maturity Date (as defined in the DIP Term Sheet); and (ii) the delivery of written notice (which may be by electronic mail) by the DIP Agent to counsel for the Debtors of the occurrence and during the continuation of an Event of Default (as defined in the DIP Term Sheet) (the first to occur of (a) and (b) being a "**Termination Event**").

16.     **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Agent or an order of this Court), except as provided in the DIP Term

31

Sheet and this ~~Interim~~Final Order or approved by the Court to the extent required under applicable bankruptcy law.

17.    **Events of Default**.  The occurrence of an "Event of Default" under the DIP Term Sheet shall constitute an event of default under this ~~Interim~~Final Order, unless expressly waived in writing by the DIP Agent (collectively, the "**Events of Default**").  The failure of the Debtors to achieve a "Chapter 11 Milestone" by the applicable "Specified Deadline" (each as defined in the DIP Term Sheet), as set forth in Exhibit A to the DIP Term Sheet shall, constitute an Event of Default.

18.    **Rights and Remedies Upon Event of Default**.

(a)    Upon the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default and following the declaration of a Termination Event, upon five (5) business day's prior written notice of such occurrence (the "**Remedies Notice Period**"), in each case given to the Debtors and their counsel, counsel for the Committee, if any, and the U.S. Trustee, the DIP Agent and DIP Lender shall be entitled to exercise its or their rights and remedies with respect to the Debtors in accordance with the DIP Credit Documents, subject to the DIP Agent seeking and obtaining relief, as applicable, from the Court (which may be on an expedited basis).  Nothing in ~~this~~the Interim Order or this Final Order shall limit the ability of any party to immediately exercise rights and remedies with respect any non-Debtor.

(b)    Notwithstanding the preceding paragraph, immediately following the giving of notice by the DIP Agent of the occurrence of an Event of Default and the declaration of a Termination Event:  (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agent as provided in the DIP Term Sheet and this

~~Interim~~Final Order; (ii) the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this ~~Interim~~Final Order and of the DIP Term Sheet; (iii) the Debtors shall have no right to use any of such proceeds other than towards the satisfaction of the DIP Obligations and the Carve Out; and (iv) any obligation otherwise imposed on the DIP Agent to provide any loan or advance to the Debtors pursuant to the DIP Credit Documents shall immediately be suspended.  Upon the termination of the Remedies Notice Period, the DIP Agent may seek a prompt expedited hearing at which the Court will determine an appropriate remedy as a consequence of the Termination Event (which may include, without limitation, those rights and remedies outlined in the DIP Term Sheet).   In the event that the DIP Agent declares a Termination Event between this Court's approval of a sale of substantially all of the Debtors' assets and the closing of such sale that results in cash proceeds being paid to the DIP Agent at closing, as set forth in the DIP Term Sheet, the DIP Agent and the DIP Lender shall engage in good faith negotiations with the Debtors to determine the amount necessary to fund a winddown process, which amount shall be subject to the DIP Agent's approval in its sole discretion.

(c)     Nothing included herein nor in the Interim Order shall prejudice, impair, or otherwise affect the DIP Agent's rights to seek any other or supplemental relief in respect of the DIP Agent's rights, as provided in the DIP Term Sheet.

19.     **Indemnification**.  The Debtors shall indemnify and hold harmless the DIP Agent in accordance with the terms and conditions of the DIP Term Sheet.

20.     **Proofs of Claim**.  The DIP Agent will not be required to file proofs of claim in these Chapter 11 Cases or any Successor Cases in order to assert claims arising under the DIP Credit Documents.  The Prepetition 1L Agent shall not be required to file proofs of claim in these Chapter 11 Cases or any Successor Cases in order to assert claims on behalf of itself or the

Prepetition 1L Lenders arising under the Prepetition 1L Credit Documents, including, without limitation, any principal, unpaid interest, fees, expenses, and other amounts under the Prepetition First Lien Debt Documents.  SVB shall not be required to file proofs of claim in these Chapter 11 Cases or any Successor Cases in order to assert claims on behalf of cash collateral held to secure the Debtors' cash management obligations.

21.    **Intercreditor Agreements**.    The Intercreditor Agreements are binding and enforceable against the parties thereto in accordance with their terms, and no party shall be entitled to take any action that would be contrary to the provisions thereof.  Nothing contained in ~~this~~the Interim Order or this Final Order shall alter or modify, or be deemed to alter or modify, the rights of any party under the Intercreditor Agreements.  All payments received or obtained by a lender under the Intercreditor Agreements in accordance with or pursuant to ~~this~~the Interim Order or this Final Order shall be applied in accordance with the Intercreditor Agreements.

22.    **Other Rights and Obligations**.

(a)    Good Faith Under Section 364(e) of the Bankruptcy Code.    No Modification or Stay of this ~~Interim~~Final Order.  The DIP Agent has acted in good faith in connection with negotiating the DIP Credit Documents and extending credit under the DIP Facility, and its reliance on this ~~Interim~~Final Order is in good faith.  Based on the findings set forth in ~~this~~the Interim Order, this Final Order, and the record made during the ~~Interim~~ ~~Hearing~~Hearings, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of ~~this~~the Interim Order or this Final Order are hereafter reversed, modified, amended, or vacated by a subsequent order of this or any other Court, the DIP Agent is entitled to all the benefits and protections provided in section 364(e) of the Bankruptcy Code.  Any such reversal, modification, amendment, or vacatur shall not affect the validity and

enforceability of any advances made pursuant to ~~this~~the Interim Order or this Final Order or the liens or priority authorized or created hereby.  Any claims, liens, or DIP Protections granted to the DIP Agent hereunder arising prior to the effective date of such reversal, modification, amendment, or vacatur shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, and the DIP Agent shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Term Sheet are made in reliance on this ~~Interim~~Final Order, the obligations owed to the DIP Agent prior to the effective date of any reversal or modification of this ~~Interim~~Final Order cannot, as a result of any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose their lien priority or super-priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Agent under this ~~Interim~~Final Order and/or the DIP Credit Documents.

(b)    <u>Binding Effect</u>.  The provisions of this ~~Interim~~Final Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lender, the Prepetition 1L Agent, the Prepetition 1L Lenders, the Debtors, the Prepetition Junior Secured Parties, and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 cases.

(c)    <u>No Waiver</u>.  The failure of the DIP Agent to seek relief or otherwise exercise their rights and remedies under the DIP Credit Documents, the DIP Facility, ~~this~~the Interim Order, this Final Order, or otherwise, as applicable, shall not constitute a waiver of the DIP Agent's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein or in

the Interim Order, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Agent or DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Agent and/or DIP Lender to (i) request conversion of the Chapter 11 Cases to a case under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Agent and/or DIP Lender may have pursuant to ~~this~~the Interim Order, this Final Order, the DIP Credit Documents, or applicable law.  Nothing in ~~this~~the Interim Order or this Final Order shall interfere with the rights of any party with respect to any non-Debtor.

(d)    No Third-Party Rights.    Except as explicitly provided for herein, this ~~Interim~~Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(e)    No Marshaling.    The DIP Agent shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral; provided, however, DIP Obligations shall be repaid from proceeds of Avoidance Actions only after the DIP Agent and DIP Lender have used commercially reasonable efforts to first be repaid from the proceeds of other DIP Collateral.

(f)    Section 552(b).    In light of the DIP Agent's agreement to subordinate its liens and super-priority claims to the Carve Out~~, and subject to entry of the Final Order~~, the DIP Agent is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and

~~DOCS_SF:107537~~NY\6869006.2 52624/002

the "equities of the case" exception shall not apply with respect to proceeds, product, offspring, or profits of any of the DIP Collateral.

(g)    Amendment.  The Debtors and the DIP Agent may amend or waive any provision of the DIP Credit Documents, *provided* that, to the extent such amendment or waiver impairs the Debtors or the DIP Collateral or otherwise constitutes a material modification of the DIP Credit Documents, such amendment or waiver must be on notice to the U.S. Trustee and any Committee, who shall have five (5) business days from the date of such notice within which to object in writing to such amendment or waiver.  If the U.S. Trustee or any Committee timely objects to any such amendment or waiver to the DIP Credit Documents, such amendment or waiver shall only be permitted pursuant to an order of this Court.

(h)    Credit Bidding.  In connection with any sale process authorized by the Court, (i) the DIP Agent may credit bid (each a "**Credit Bid**") up to the full amount of the applicable outstanding DIP Obligations, in each case including any accrued interest and expenses, as provided for in section 363(k) of the Bankruptcy Code in any sale of any DIP Collateral, and (ii) subject to entry of the Final Order, SVB (in its capacity as a Prepetition 1L LenderAgent) may Credit Bid up to the full amount of the outstanding Prepetition Obligations, including any accrued interest and expenses, as provided for in section 363(k) of the Bankruptcy Code in any sale of any Prepetition Collateral, in each case,  whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case, without further order from this Court authorizing same.  The DIP Agent or, subject to entry of the Final Order, SVB (in its capacity as a Prepetition 1L LenderAgent), as applicable, shall each be considered a "Qualified Bidder" with respect to their rights to acquire all or any of the Debtors' assets by Credit Bid.

37

(i)     <u>No Subrogation</u>.   In no event shall any person or entity who pays (or through the extension of credit to the Debtors, causes to be paid) any ~~of~~<u>loans in</u> the DIP ~~Loans~~<u>Facility to</u> be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted in favor of, or conferred upon, the DIP Agent by the terms of ~~this~~<u>the</u> Interim <u>Order, this Final</u> Order, the other DIP Credit Documents, or otherwise at law or contract or in equity, unless and until such time as all of the DIP ~~Loans have~~<u>Facility has</u> been indefeasibly paid in full in cash on a final basis and all lending commitments have been terminated under the DIP Facility <u>and the DIP Credit Documents</u> and the DIP Agent has received a full release in connection therewith.

(j)     <u>Rights Preserved</u>.   Other than as expressly set forth in ~~this~~<u>the</u> Interim <u>Order or this Final</u> Order, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Agent and SVB (in its capacity as a Prepetition 1L Lender) are preserved.

23.     **Cooperation**.   All Prepetition 1L Lenders shall cooperate with the DIP Agent in its efforts to enforce its liens and security interests in the DIP Collateral (without limiting in any way the Debtors' rights under the remedies procedures set forth in paragraph 18 herein).   Such lenders shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect the DIP Agent from enforcing its rights or remedies in the DIP Collateral.

24.     **Survival of Interim <u>Order and Final</u> Order and Other Matters**.   The provisions of ~~this~~<u>the</u> Interim <u>Order, this Final</u> Order, and any actions taken pursuant hereto shall survive entry of any order that may be entered (i) confirming any chapter 11 plan in the Chapter 11 Cases; (ii) converting of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or any Successor Cases; (iii) to the extent authorized by applicable law, dismissing the Chapter 11 Cases; (iv) withdrawing of the reference of the Chapter 11 Cases from this Court; or

(v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.  The terms and provisions of ~~this~~the Interim Order and this Final Order, including the DIP Protections granted pursuant to ~~this~~the Interim Order, this Final Order and the DIP Credit Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by ~~this~~the Interim Order and this Final Order until all the obligations of the Debtors to the DIP Agent pursuant to the DIP Credit Documents have been indefeasibly paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Credit Documents that survive such discharge by their terms).

(a)  Inconsistency.  In the event of any inconsistency between the terms and conditions of the DIP Credit Documents, the DIP Motion, ~~this~~the Interim Order, this Final Order, or any other "first-day" or "second-day" order in these Chapter 11 Cases, the provisions of this ~~Interim~~Final Order shall govern and control.

(b)  Enforceability.  This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this ~~Interim~~Final Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.  ~~The rights of all parties in interest to object to the terms of the Final Order, the DIP Term Sheet, and any other DIP Financing Document at the Final Hearing are expressly reserved.~~

(c)     Objections Overruled.  All objections to the DIP Motion to the extent not withdrawn or resolved are hereby overruled on ~~an interim~~a final basis.

(d)     No Waivers or Modification of ~~Interim~~Final Order.   The Debtors irrevocably waive any right to seek any modification or extension of this ~~Interim~~Final Order without the prior written consent of the DIP Agent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Agent.

25.     ~~Final Hearing.~~Notwithstanding any other provisions of this Final Order, any agreements approved hereby, or any other orders in these Chapter 11 Cases, any statutory liens (collectively, the "Tax Liens") held by City of Allen, Allen I.S.D., Collin County, and Collin College or any other ad valorem tax creditor (the "Tax Authorities") for prepetition and postpetition taxes shall not be primed nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Taxing Authorities are fully preserved; *provided, however*, that nothing in this paragraph 25 shall prejudice any party's rights under Section 505 of the Bankruptcy Code or any party's rights to object to any proof of claim or scheduled claim relating to the Tax Authorities.

~~(a)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for June 6, 2023, at 1:00 p.m. prevailing Central time at the United States Bankruptcy Court for the Southern District of Texas.   Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection no later than June 1, 2023, at 5:00 p.m. prevailing Central time, which objections shall be served so that the same are received on or before such date by:  (i) bankruptcy counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 440 Louisiana Street, Suite 900, Houston, Texas 77002, Attn:  Benjamin L.~~

Wallen, Esq. (bwallen@pszjlaw.com); (ii) counsel for the DIP Lender, (a) Morrison & Foerster LLP, (x) 200 Clarendon St., Floor 21, Boston, MA 02116, Attn: Alexander Rheaume, Esq. (arheaume@mofo.com), and (y) 250 West 55th Street, Floor 20, New York, NY 10019, Attn: Seth J. Kleinman, Esq. (skleinman@mofo.com) and Miranda K. Russell, Esq. (mrussell@mofo.com) and (b) Jackson Walker LLP, 1401 McKinney Street, Suite 1900 Houston, Texas, 77010, Attn: Bruce Ruzinsky (bruzinsky@jw.com) and Matthew Cavenaugh (Mcavenaugh@jw.com); (iii) counsel to the Committee; and (iv) the U.S. Trustee, Attn: [__], Esq.,

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)    The Debtors shall promptly serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any party that has filed a request for notices with this Court.

(c)    Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to, any of the terms in this Interim Order, subject to the protections under Section 364(e) and the rights of the DIP Agent to terminate the DIP Term Sheet if such Final Order is not acceptable to them. In the event this Court modifies any of the provisions of this Interim Order or the DIP Credit Documents following such further hearing, such modifications shall not affect

41

the rights and priorities of DIP Agent pursuant to this Interim Order with respect to the DIP Collateral, and any portion of the DIP Obligations that arises or is incurred, advanced, or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

26.     **Effect of this ~~Interim~~Final Order**.   This ~~Interim~~Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and, notwithstanding Bankruptcy Rules 6003 and 6004 or any other Bankruptcy Rule, shall take effect and be enforceable as of the Petition Date immediately upon execution thereof, and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.

27.     **Retention of Jurisdiction**.   The Court has and will retain jurisdiction to enforce this ~~Interim~~Final Order according to its terms.

        **Signed:  ~~May 17~~_____, 2023.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

DOCS_NY:~~46975~~47307006.2 ~~52624~~52624/002

**Exhibit A**

**DIP Term Sheet**

**LIFESIZE, INC.**

**SUPERPRIORITY SECURED DEBTOR-IN-POSSESSION
CREDIT FACILITY TERM SHEET**

**Dated as of May 16, 2023**

Reference is made to the following documents (collectively, and including, any other agreements executed in connection therewith, the "Prepetition 1L Credit Documents") among, *inter alia*, **LIFESIZE, INC.**, a Delaware corporation ("Lifesize") and **SILICON VALLEY BANK** (as defined below), in its capacity as administrative agent and collateral agent for the Prepetition 1L Lenders (as defined below) (in such capacity, the "Prepetition 1L Agent"): (1) Credit Agreement dated as of March 2, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition 1L Credit Agreement" and the obligations thereunder, the "Prepetition 1L Obligations"), by and among Lifesize, **SL MIDCO 1, LLC (f/k/a MARLIN-SL MIDCO 1, LLC)**, a Delaware limited liability company ("Holdings"), **SL MIDCO 2, LLC (f/k/a MARLIN-SL MIDCO 2, LLC)**, a Delaware limited liability company ("Midco 2"), **SERENOVA, LLC**, a Delaware limited liability company ("Serenova"), and **LO PLATFORM MIDCO, INC.**, a Delaware corporation ("LO Platform"), the lenders from time to time party thereto (the "Prepetition 1L Lenders"), and the Prepetition 1L Agent; (2) Guarantee and Collateral Agreement dated as of March 2, 2020 (as amended, restated, supplemented or otherwise modified from time to time), by and among Lifesize, Holdings, Midco 2, Serenova, and LO Platform in favor of the Prepetition 1L Agent; and (3) Intellectual Property Security Agreement dated as of March 2, 2020 (as amended, restated, supplemented, or otherwise modified from time to time), by and among Serenova, Lifesize, and LO Platform and the Prepetition 1L Agent.

This term sheet (including all schedules, annexes, and exhibits hereto, this "Term Sheet" and together with the Interim Order, the Final Order, and the Approved Budget (each as defined below), the "DIP Credit Documents") describes the terms and conditions of a proposed superpriority secured debtor in possession term loan credit facility (the "DIP Credit Facility") to be provided by the DIP Lenders (as defined below) to the following entities: LifeSize, Holdings, Midco 2, Serenova, LO Platform, Telstrat, LLC, Serenova WFM, Inc. (f/k/a Loxysoft, Inc.), and Light Blue Optics, Inc., in connection with cases (the "Chapter 11 Cases") to be filed by such entities (collectively, the "Debtors") in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division (the "Bankruptcy Court") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") on or before May 16, 2023 (the "Target Petition Date").

This Term Sheet is not an offer for the purchase, sale, or subscription or invitation of any offer to buy or sell or to subscribe for any securities. The terms and conditions set forth in this Term Sheet do not constitute or create an agreement, obligation, or commitment of any kind by or on behalf of any party, unless and until executed by each of the undersigned parties hereto.

| | |
|---|---|
| Purpose: | The DIP Credit Facility will be provided to the Debtors for the purpose of effectuating a sale of substantially all of the Debtors' assets as a going concern pursuant to section 363 of the Bankruptcy Code (a "Sale") in accordance with the DIP Credit Documents and subject to Bankruptcy Court approval. |
| Borrowers: | The Debtors. |

| Guarantors: | None. |
|---|---|
| DIP Agent: | FIRST CITIZENS BANK & TRUST COMPANY (successor by purchase to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bridge Bank, N.A. (as successor to Silicon Valley Bank) ("Silicon Valley Bank"), as collateral agent for the DIP Lenders. |
| DIP Lenders: | Silicon Valley Bank, for itself and any other lenders affected by the Roll Up (as defined below). |
| Closing Date: | "Interim Closing Date" means the date on which the "Conditions Precedent to the Interim DIP Draw" set forth below shall have been satisfied or waived by the DIP Lenders. |
| | "Final Closing Date" means the date on which the conditions precedent to the Final DIP Loan (as defined below) set forth below (including, without limitation, entry of the Final Order (as defined below)) shall have been satisfied or waived by the DIP Lenders.  The Interim Order and the Final Order are referred to collectively as the "DIP Orders." |
| Facility Type and Amount: | A multi-draw loan facility in an aggregate maximum principal amount, before giving effect to the Roll Up (as defined below), of **$5,000,000** (the "Maximum Commitment"). |
| Fees: | A commitment fee equal to 5.00% of the Maximum Commitment shall be due and payable to Silicon Valley Bank on the earliest of the Maturity Date, the occurrence of a Termination Event, and the occurrence of a Mandatory Prepayment Event. |
| Availability: | In accordance with this Term Sheet, to be made available to Borrower as follows: |
| | Interim DIP Loan:  A single draw in the amount of **$1,500,000** to be available on the Interim Closing Date, which will be used to fund the Approved Budget (as defined below) until the Final Closing Date, subject to the Draw Conditions (as defined below) and the other provisions of this Term Sheet (the "Interim DIP Draw"); and |
| | Final DIP Loan:  Two draws permitted in the an aggregate amount of $3,500,000 to be available, in accordance with the Approved Budget, in the amount of **$1,750,000** (the "Initial Final DIP Draw") on the Final Closing Date by no later than June 13, 2023, and an additional **$1,750,000** by no later than July 12, 2023 (the "Second Final DIP Draw," and together with the Initial Final DIP Draw, the "Final DIP Draws"), which will be used in each case to fund the Approved Budget (as defined below) until the Maturity Date, subject in each case to the Draw Conditions (as defined below) and the other provisions of this Term Sheet, plus the amount of any Roll Up (collectively, the "Final DIP Loans" and, together with the Interim DIP Draw, the "DIP Loans"). |

45

| | |
|---|---|
| | The DIP Lenders shall not be obligated to fund any Interim DIP Draw or any of the Final DIP Draws unless the Borrower certifies, in a writing from an officer of the Borrower (email being acceptable), that the following conditions (each, a "Draw Condition") are met as of the date of each draw:<br><br>1. All of the representations and warranties contained in this Term Sheet are true and correct as of that date.<br><br>2. No event has occurred and is continuing, or would result from such draw or any actions related thereto, that constitutes an Event of Default (as defined below) under this Term Sheet.<br><br>3. The Debtors are in compliance with the Chapter 11 Milestones (as defined in **Exhibit A** to the DIP Term Sheet) as of that date.<br><br>4. The Debtors have delivered to the DIP Agent the most recent Approved Budget and such other information as requested by the DIP Agent, in form and substance satisfactory to the DIP Agent in its reasonable discretion.<br><br>5. The amounts requested by the Borrower shall be used for an authorized purpose as defined under "Permitted Uses" below and in accordance with the Approved Budget, subject to a Permitted Variance (as defined below). |
| Permitted Uses: | DIP Loans will be used for (a) working capital and general corporate purposes of the Debtors, (b) bankruptcy related costs and expenses (subject to the Carve Out (as defined below)), (c) costs and expenses related to the Sale, all in accordance with the Approved Budget, and (d) for any other purpose agreed upon in the DIP Credit Documents.<br><br>None of the proceeds of the DIP Loans or Cash Collateral shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against (a) the Prepetition 1L Agent and the Prepetition 1L Lenders or (b) the Prepetition Junior Secured Parties (as defined below), except up to the amount of $25,000 for an investigation by a statutory committee as set forth in the DIP Orders. |
| Prepetition Junior Secured Parties: | The "Prepetition Junior Secured Parties" are, collectively, (a)(i) **SVB INNOVATION CREDIT FUND VIII, L.P.** (f/k/a WestRiver Innovation Lending Fund VIII, L.P.), as administrative agent and as a lender for under that certain Credit Agreement dated as of March 2, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition 2L Credit Agreement"), and (ii) the lenders party thereto, and (b) **MARLIN LO HOLDINGS LP, MARLIN LO TOPCO, INC. AND MARLIN LO TOPCO II, INC.** pursuant to that certain Subordinated Secured Credit Agreement dated as of October 31, 2022 (as amended, restated, supplemented, or otherwise modified from time to time, the "Sponsor Credit Agreement"). The obligations under |

46

| | |
|---|---|
| | the Sponsor Credit Agreement in a principal amount not to exceed $4,000,000 are secured by a senior lien on certain employee retention tax credits and related assets, to the extent permitted by applicable non-bankruptcy law (the "ERC Proceeds"). |
| Budget, Projections, and Reporting: | Subject to the satisfaction of the conditions precedent set forth below, use of cash shall be subject to (and limited by) a 13-week cash flow forecast commencing on the Target Petition Date, which forecast shall include sufficient detail regarding expenses to be paid during each week along with information sufficient to denote the purpose of such expenses and shall be in form and substance acceptable to the DIP Agent, in its sole and absolute discretion (the "Approved Budget," a copy of which is attached as **Exhibit B** to this Term Sheet).

By no later than 5:00 p.m. PT on the second business day of each week, commencing with the first full week after the date on which the Chapter 11 Cases are filed (the "Petition Date") (each, a "Reporting Date"), the Debtors shall provide to the DIP Agent an updated 13-week cash flow forecast, containing line items of sufficient detail to reflect such Borrower's projected cash receipts and disbursements for such 13-week period on a weekly basis (the "13-Week Forecast"). Such 13-Week Forecast shall be acceptable to the DIP Agent, and upon acceptance by the DIP Agent, such 13-Week Forecast shall become the new Approved Budget. In the event that the DIP Agent and the Debtors do not agree to an updated Approved Budget, the Approved Budget shall be the then-existing Approved Budget or such Approved Budget as may be approved by the Bankruptcy Court after a hearing.

On each Reporting Date, Borrower shall deliver to the DIP Agent a variance report (each, a "Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Each Variance Report shall indicate whether there are any adverse variances that exceed the allowed variances, which means, in each case measured on a cumulative basis for the first two weeks of the Chapter 11 Cases, then the first three weeks of the Chapter 11 Cases, and on a rolling four-week period thereafter and for the period from the Petition Date (x) up to 15% of "Total Operating Disbursements," or (y) 15% less than the projected "Net Operating Cash Flow" (in either case, a "Permitted Variance").

The Debtors shall also deliver to the DIP Agent on each Reporting Date the following:

    (i)    weekly reports listing all cash receipts and cash disbursements made during the prior week;

    (ii)    a report setting forth (a) for the most recent 13-Week Forecast, the total of receipts and expenses set forth in such 13-Week Forecast and (b) employee headcount as of such Reporting Date, together with the name, department, and title of each employee; and |

| | |
|---|---|
| | (iii)    accounts payable listings and agings as of such Reporting Date (each of the foregoing reports, including the Variance Report, the "DIP Budget Reports"). |
| Priority: | The DIP Orders shall also provide authorization for the Debtors to use Cash Collateral of the Prepetition 1L Agent and the Junior Prepetition Secured Parties (together, the "Prepetition Secured Parties") in the manner, and according to the terms, conditions, and limitations, set forth in the DIP Orders and the Approved Budget. |
| | All DIP Loans and other liabilities and obligations of the Borrower to the DIP Agent and DIP Lenders (together with the DIP Agent, the "DIP Secured Parties") under or in connection with this Term Sheet, the Interim Order, the Final Order, or any other DIP Loan Document (collectively, the "DIP Obligations") shall be: |
| | (i)    pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Chapter 11 Cases with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code (the "DIP Superpriority Claim") (but in all cases subject to the Carve-Out), *provided that* pending entry of the Final Order, the DIP Superpriority Claim shall not be payable from the proceeds of Avoidance Actions; |
| | (ii)    pursuant to sections 364(c)(2), secured by a perfected first-priority lien granted to the DIP Agent, for the benefit of the DIP Secured Parties, in and on all of the DIP Collateral (as defined below) to the extent that such Collateral is not subject to valid, perfected, and non-avoidable liens as of the Petition Date (but in all cases subject to the Carve-Out); |
| | (iii)    pursuant to section 364(c)(3) of the Bankruptcy Code, secured by a perfected junior priority lien to the DIP Agent, for the benefit of the DIP Secured Parties, in and on all of the DIP Collateral, to the extent that such Collateral is subject to (i) liens that are expressly provided to be senior in priority to liens of the Prepetition 1L Agent under the Prepetition 1L Credit Agreement, or (ii) valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code (the liens specified in subsections (i) and (ii) hereof are referred to collectively as the "Permitted Liens"), but in all cases subject to the Carve-Out (for the avoidance of doubt, the Permitted Liens include the liens securing the obligations under the Sponsor Credit Agreement); |
| | (iii)    pursuant to section 364(d) of the Bankruptcy Code, secured |

by a perfected priming security interest and lien granted to the DIP Agent, for the benefit of the DIP Secured Parties (the "Priming DIP Liens" and together with the liens granted pursuant to items (ii) and (iii) above, the "DIP Liens") in and on all of the DIP Collateral (but in all cases subject to the Carve-Out), subordinated only to the Permitted Liens, which Priming DIP Liens shall prime all existing liens, rights, and interests granted to or for the benefit of the Prepetition 1L Agent under the Prepetition 1L Credit Documents and the Prepetition 2L Agent under the Prepetition 2L Credit Agreement; and

(iv)    The Priming DIP Liens shall not be subject to being treated pari passu with or subordinated to any other liens or security interests other than the Permitted Liens, *provided* that the Priming DIP Liens shall be junior and subordinate to payment of the Carve-Out.

Under the proposed Interim Order, the term "Carve-Out" means, collectively: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) ("US Trustee Fees"); (ii) fees payable to the Clerk of the Bankruptcy Court ("Case Administration Fees"); (iii) unpaid postpetition professional fees and expenses ("Debtor Professional Fees") payable to each legal or financial advisor retained by the Debtors, including the noticing agent (the "Debtor Professionals"), that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined in the Interim Order or Final Order as in effect), but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Bankruptcy Court pursuant to sections 328, 330, 331, and 503 of the Bankruptcy Code or any order of the Bankruptcy Court (whenever such fees may be actually allowed whether before or after the Termination Event); (iv) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "Professional Fees") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event, but subject to the aggregate amount(s) set forth in the Approved Budget (plus success fees or commissions payable to the Debtors' investment banker, Piper Sandler & Co., as approved by the Bankruptcy Court; *provided*, that the payment of such success fees and commissions shall in all cases be subject to (x) the Approved Budget, and (y) the prior indefeasible repayment in cash of at least $12,500,000.00 of the outstanding balance of the DIP Loans and the Prepetition 1L Obligations (to the extent that the Roll Up has not been approved at the time of payment)) and ultimately allowed by the Bankruptcy Court pursuant to sections 328, 330, 331, 503, and 1102 of the Bankruptcy Code or any order of the Bankruptcy Court (whenever such fees may be actually allowed before or after the Termination Event); (v) Professional Fees ultimately allowed by the Bankruptcy Court pursuant to sections 328, 330, 331, and 503 of the Bankruptcy Code or any order of the Bankruptcy Court paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to

49

| | exceed $100,000; (vi) in the event the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, reasonable fees, and expenses incurred by a duly-appointed trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000; (vii) amounts in an aggregate amount not to exceed $800,000.00 payable by the Debtors under any Bankruptcy Court-approved key employee retention plan and subject to the Approved Budget (as approved, the "KERP"); *provided*, in the event of a prior indefeasible repayment in cash of at least $12,500,000.00 of the outstanding balance of the DIP Loans and the Prepetition 1L Obligations (to the extent that the Roll-Up has not been approved at the time of payment), any remaining amount above $800,000 payable by the Debtors under the KERP up to $192,500.00; and (viii) accrued and unpaid obligations of the Debtors for postpetition payroll and employee-related taxes and amounts related to IBNR health insurance reimbursement claims to the extent set forth in the Approved Budget. |
| | For the avoidance of doubt, to the extent that (a) proceeds from the DIP Loans and/or (b) Cash Collateral are used under the DIP Orders on account of Professional Fees set forth in the Approved Budget, such amounts shall be deemed to correspondingly reduce the Carve-Out for such Professional Fees, whether or not such funds are disbursed to or for the benefit of such professionals. |
| | For the avoidance of doubt and notwithstanding anything to the contrary herein or elsewhere, the Carve-Out shall be senior to all claims and liens, including DIP Liens, liens granted to the Prepetition Junior Secured Parties under their respective loan documentation, as well as any adequate protection liens and claims described herein, other than the Permitted Liens. |
| | So long as no Termination Event has occurred, the Debtors shall be authorized and directed to fund, on a weekly basis, into the trust account of the Debtors' bankruptcy counsel an amount equal to the budgeted amount for Professional Fees in accordance with the Approved Budget. |
| Roll Up of Amounts Owed Under the Prepetition 1L Credit Documents: | Subject to the entry of the Final Order, on the Final Closing Date, the indebtedness of Borrower under, in connection with, or with respect to the Prepetition 1L Credit Documents, whether for borrowed money, fees, expenses, or otherwise shall be converted into DIP Loans (the "Roll-Up"), subject to customary challenge rights in favor of creditors or any statutory committee; *provided* that the total amount of the Roll Up shall not exceed $15,000,000 plus interest payable on such amounts under this Term Sheet from and after the Petition Date. The Roll-Up is subject to the terms and conditions of this Term Sheet and the DIP Orders.   The Roll-Up shall consist of the First Priority Term Commitment (original principal amount of $5,000,000, plus any fees and interest accrued under the First Priority Term Commitment, each as of the Final Closing Date, plus additional principal obligations under the Prepetition 1L Credit Agreement such that the total Roll-Up shall not exceed $15,000,000. |

50

| | |
|---|---|
| Adequate Protection: | **Prepetition 1L Agent**:  As adequate protection, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration for the Prepetition 1L Agent consenting to Borrower's continuing to use the Prepetition 1L Agent's Collateral (as defined in the Prepetition 1L Credit Documents), including Cash Collateral, the Prepetition 1L Agent shall receive, *inter alia*, (a) replacement liens on DIP Collateral securing borrowings made under the Prepetition 1L Credit Documents and (b) a 507(b) Claim (as defined in the Interim Order) in each Chapter 11 Case, in each case, subject to the Carve-Out and in an amount equal to the aggregate diminution in value of its interests in such Prepetition 1L Agent's Collateral occurring on or after the Petition Date.

In addition to (a) and (b) above, the Prepetition 1L Agent shall receive additional adequate protection as follows:  (i) accrual of interest at the contractual, non-default rate of interest provided under the Prepetition 1L Credit Documents; and (ii) reimbursement of the Prepetition 1L Agent's reasonable and documented professionals' fees and expenses (such reimbursement to be made in the manner and in accordance with the procedures set forth in the DIP Orders).

**Prepetition Junior Secured Parties**:  As adequate protection, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and in consideration for the Prepetition Junior Secured Parties consenting to Borrower's continuing to use of the Prepetition Junior Secured Parties' collateral, including Cash Collateral, Prepetition Junior Secured Parties shall receive, *inter alia*, (a) replacement liens on DIP Collateral securing loans made on behalf of the Prepetition Junior Secured Parties, with such adequate protection liens being junior only to (i) the claims and liens of the Prepetition 1L Agent (including the Prepetition 1L Agent's Adequate Protection Liens) and (ii) the claims and liens of the DIP Secured Parties, and (b) a 507(b) Claim in each Chapter 11 Case (junior in priority to the DIP Superpriority Claim and Silicon Valley Bank's 507(b) Claim), in each case subject to the Carve-Out and in an amount equal to the aggregate diminution in value of its interests in such Prepetition Junior Secured Parties' Collateral occurring on or after the Petition Date.  Notwithstanding the foregoing, the obligations under the Sponsor Credit Agreement shall continue to be secured by the ERC Proceeds and, with respect to such ERC Proceeds, senior to the DIP Superpriority Claim, the DIP Liens, the Carve-Out, and any adequate protection provided hereby. |
| DIP Collateral: | "DIP Collateral" means, collectively, all now owned or hereafter acquired assets and property of the Debtors and each of their chapter 11 estates, whether real or personal, tangible or intangible, foreign or domestic, or otherwise, and any and all proceeds therefrom, including, without limiting the generality of the foregoing, all cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, vehicles, trailers, rolling stock, (subject to entry of the Final Order) avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") and the proceeds thereof, all intercompany claims, any and all proceeds available to the Debtors arising from |

51

| | insurance policies (including, without limitation, policies for the benefit of directors and officers), all claims and causes of action of the Debtors or its estate and any and all proceeds therefrom, and all intellectual property, which "DIP Collateral," for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets that are secured pursuant to the Prepetition 1L Credit Documents. |
|---|---|
| Interest Rate: | 12% per annum, with such interest payable in cash monthly in arrears on the monthly anniversary of the Petition Date, computed based on a 360-day year; *provided* that at interest payable on the Roll Up from and after the Petition Date will be paid-in-kind by adding to the principal on a monthly basis absent an Event of Default, *provided further* that such paid-in-kind interest and any interest thereon shall be due and payable in cash upon the earlier of the Maturity Date and a Mandatory Prepayment Event (as defined below). |
| Default Interest: | At all times while a default exists, principal, interest, and other amounts shall bear interest at a rate per annum equal to 2.00% in excess of the interest rate set forth under "Interest Rate" above. |
| Maturity Date: | The DIP Loans shall mature on the earliest to occur of the following (such date, the "Maturity Date"):<br><br>(i)   ninety (90) days after the Petition Date; and<br><br>(ii)   the acceleration of any of the DIP Loans and the termination of the commitments to make the DIP Loans in accordance with the terms of this Term Sheet or the other DIP Credit Documents, as applicable (including, without limitation, the non-satisfaction of any Chapter 11 Milestone by the applicable specified deadline and the non-waiver of such non-satisfaction by the DIP Agent).<br><br>In all events, payment of the DIP Loans shall be applied in the following order of priority:  first, to satisfy any accrued interest, fees, and expenses under the DIP Loans; second, to satisfy the new money DIP Loans up to the amount of the Maximum Commitment; third, to satisfy the Roll Up portion relating to the First Priority Term Commitment (as defined in the Prepetition 1L Credit Agreement); and fourth, to satisfy the remaining Roll Up. |
| Optional Prepayments: | The Borrower may prepay the DIP Loans and terminate the Maximum Commitment in whole or in part at any time. |
| Mandatory Prepayments: | The following amounts shall be applied, after reserving any amounts in the Approved Budget that have not yet been incurred (whether prior to or after a Sale, including the Carve-Out, and net of any associated costs of Sale, such as success fees payable to certain professionals retained by the Debtors with the approval of the Bankruptcy Court) (the "Excess Sale Proceeds"), to repay the DIP Loans and obligations related thereto |

| | (each, a "Mandatory Prepayment Event"): |
|---|---|
| | (i)    100% of the Excess Sale Proceeds from any Sale simultaneous with the consummation thereof less an amount to be determined to fund a windown, which amount shall be determined upon good faith negotiations between the DIP Agent and the Debtors, but subject in all cases to the DIP Agent's sole discretion; and |
| | (ii)    100% of the net proceeds of any sales or other extraordinary receipts (including tax refunds, indemnity payments, pension reversions, acquisition purchase price adjustments, and insurance proceeds not included as proceeds of asset dispositions in the Approved Budget) realized by the Borrower, other than the ERC Proceeds; *provided* that once the obligations under the Sponsor Credit Agreement are paid in full, then such proceeds shall be applied as set forth in clause (ii) hereof. |
| | The Debtors will not seek or support entry of any order that provides for a Sale unless the DIP Agent consents to such Sale in its sole and absolute discretion in writing (which may be via email). |
| Representations and Warranties: | Customary and appropriate for financings of this type, as set forth in the DIP Orders. |
| Conditions Precedent | Conditions Precedent to Interim DIP Draw.  The obligations of the DIP Lenders to make the Interim DIP Draw will be subject to satisfaction, or waiver by the DIP Agent in its sole and absolute discretion, of the following conditions precedent: |
| | (i)    the Debtors shall have timely delivered the Approved Budget to the DIP Agent; |
| | (ii)    the Chapter 11 Milestones listed in **Exhibit A** hereto shall have been satisfied by the applicable Specified Deadline (including, without limitation, execution by a buyer and the Debtors of an asset purchase agreement for a Sale in a form approved by the DIP Agent); |
| | (iii)    the Interim Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed, or vacated, without the consent of the DIP Agent.   The Borrower shall be in compliance in all respects with the Interim Order; |
| | (iv)    the Borrower shall have insurance (including, without limitation, commercial general liability and property insurance) with respect to the DIP Collateral in such amounts and scope as is customary and currently in place as |

53

| | |
|---|---|
| | of the date of this Term Sheet; and |
| | (v)     no Event of Default shall have occurred and be continuing on the Interim Closing Date. |
| | Conditions Precedent to Final DIP Draws.  The obligations of the DIP Lenders to make each of the Final DIP Draws will be subject to satisfaction, or waiver by the DIP Agent in its sole and absolute discretion, of the following conditions precedent: |
| | (i)     the Debtors shall have timely delivered the Approved Budget to the DIP Agent; |
| | (ii)     the Chapter 11 Milestones listed in **Exhibit A** hereto shall have been satisfied by the applicable Specified Deadline; |
| | (iii)     the Final Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed, or vacated, without the consent of the DIP Agent.  The Borrower shall be in compliance in all respects with the Final Order; |
| | (iv)     the Borrower shall have insurance (including, without limitation, commercial general liability and property insurance) with respect to the DIP Collateral in such amounts and scope as is customary and currently in place as of the date of this Term Sheet; and |
| | (v)     no Event of Default shall have occurred and be continuing on any borrowing date. |
| | The DIP Orders shall contain provisions that the foregoing conditions precedent to making the DIP Loans shall apply with equal force and effect as conditions precedent to the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral. |
| Covenants: | The Debtors shall: |
| | (i)     satisfy, or cause to be satisfied, each Chapter 11 Milestone on or before the applicable Specified Deadline set forth in **Exhibit A** hereto; *provided* that in the event that any order specified to be entered by the Bankruptcy Court by a Specified Deadline is not entered by such Specified Deadline, or a hearing to be held by a Specified Deadline is not held by such Specified Deadline, in either case solely by reason of the unavailability of, or inaction by, the Bankruptcy Court, then the Debtors and the DIP Agent shall negotiate in good faith for a reasonable extension of such Specified Deadline; *provided further* that any such extension shall not extend beyond the Maturity Date; |

(ii)     timely deliver, or cause to be timely delivered, to the DIP Agent the Approved Budget and DIP Budget Reports, all in accordance with the provisions set forth above;

(iii)    deliver to DIP Agent financial and other non-privileged information reasonably requested by DIP Agent and provide access to such other information (including, without limitation, historical information) and personnel (including, without limitation, through in-person meetings), all as may be reasonably requested by the DIP Agent;

(iv)    [reserved];

(v)     comply with the provisions of the DIP Credit Documents; and

(vi)    take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper, or advisable under applicable law, and to execute and deliver such documents and other papers, as may be required or reasonably requested by the DIP Agent to carry out the provisions of the DIP Credit Documents.

The Debtors shall not, without the prior written consent of the DIP Agent, do, cause to be done, or agree to do or cause to be done, any of the following:

(i)     create, incur, assume, or suffer to exist any indebtedness, except indebtedness expressly contemplated by this Term Sheet, or cause, permit to be caused, or agree to cause or permit to be caused, any direct or indirect subsidiary that is not a Debtor to, create, incur, assume, or suffer to exist any such indebtedness other than trade payables created or incurred in the ordinary course of the Debtors' business;

(ii)    create, incur, assume, or suffer to exist any lien upon any of its property, assets, income, or profits, whether now owned or hereafter acquired, except Permitted Liens, and shall not cause, or permit to be caused, any direct or indirect subsidiary that is not a Debtor to, create, incur, assume, or suffer to exist any such liens other than liens arising in connection with trade payables created or incurred in the ordinary course of the Debtors' business;

(iii)   convey, sell, lease, assign, transfer, or otherwise dispose of (including through a transaction of merger or consolidation) or cause, permit to be caused, or agree to cause or permit to be caused, any direct or indirect subsidiary that is not a Debtor to convey, sell, lease, assign, transfer, or otherwise dispose of (including through a transaction of merger or consolidation) any of its property, business, or assets,

DOCS_SF:109755.0006.2 52624/002

| | |
|---|---|
| | whether now owned or hereafter acquired, out of the ordinary course of business; or |
| | (iv)    incur or make any expenditure (including, without limitation, any capital expenditure), investment, or other payment, other than in accordance with the Approved Budget, subject to the Permitted Variances. |
| Events of Default: | "Events of Default" shall include the following and any other defaults specified as such in the DIP Orders: |
| | (i)    the occurrence of any deviation from the Approved Budget that is greater than the Permitted Variances; |
| | (ii)    failure of any of the Chapter 11 Milestones to be satisfied or, following execution of a purchase agreement in connection with a Sale, an express written statement indicating that the buyer does not intend to go forward with the Sale; |
| | (iii)    failure by any Debtor to be in compliance in all respects with any provision of the DIP Credit Documents or the DIP Orders; |
| | (iv)    reversal, modification, amendment, stay, or, vacation of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the prior written consent of the DIP Agent; |
| | (v)    the filing with the Bankruptcy Court of a plan of reorganization or liquidation in any Chapter 11 Case that does not (i) provide for indefeasible payment in full in cash to the DIP Lenders of the DIP Loans (including the portion of the DIP Loans related to the Roll Up), and all other amounts outstanding under this Term Sheet on the effective date of such plan or (ii) is otherwise unacceptable to the DIP Agent in any respect in its sole and absolute discretion; |
| | (vi)    the appointment in any Chapter 11 Case of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code); |
| | (vii)    the filing of a motion by any Debtor seeking dismissal of any Chapter 11 Case or the conversion of any Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; |
| | (viii)    the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtors to any other creditor or party in interest in the Chapter 11 |

DOCS_SF:97737 DOCS_NY:47006.2 52624/002

| | |
|---|---|
| | Cases; |
| | (ix) failure of all amounts due and owing to the DIP Secured Parties under, in respect of or in connection with the DIP Credit Facility to be paid in full in cash on the Maturity Date; |
| | (x) any event or circumstance occurs that could reasonably be expected to have a Material Adverse Effect;[1] and |
| | (xi) any provision in this Term Sheet shall cease to be binding on or enforceable against the parties hereto. |
| | An Event of Default may be waived by the DIP Agent in its sole and absolute discretion in writing (which may be via email). |
| Remedies Upon Default: | Upon the occurrence and during the continuance of any Event of Default under this Term Sheet or the DIP Orders, subject to five (5) business days' notice to the Debtors, the DIP Agent may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay: |
| | (i) declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable; |
| | (ii) terminate any further commitment to lend to the Borrower; |
| | (iii) subject to the DIP Agent seeking and obtaining such relief from the Bankruptcy Court (which may be on an expedited basis), set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Secured Parties); or |
| | (iv) subject to the DIP Agent seeking and obtaining such relief from the Bankruptcy Court (which may be on an expedited basis), take any other action or exercise any other right or remedy (including, without limitation, with respect to the Priming DIP Liens and DIP Collateral) permitted under this Term Sheet, the other DIP Credit Documents or under applicable law, including, without limitation, exercising any and all rights and remedies with respect to the DIP Collateral or any portion thereof. |

---

[1] "Material Adverse Effect" means, excluding results from the filing and administration of the Chapter 11 Cases, a material adverse effect on (a) the business, operations, properties, prospects, assets, or condition (financial or otherwise) of any Debtor or the Debtors taken as a whole; (b) the ability of any Debtor to perform the DIP Obligations in accordance with the terms of the DIP Credit Documents or the DIP Secured Parties' ability to enforce any of their rights and remedies with respect to the DIP Obligations in accordance with the terms of the DIP Credit Documents; or (c) the DIP Collateral or DIP Agent's DIP Liens on the DIP Collateral or the priority of such DIP Liens.

| Other Bankruptcy Matters: | The Borrower shall indemnify, pay and hold harmless the DIP Secured Parties (and their respective directors, officers, employees and agents) against any loss, liability, cost, or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).

The DIP Orders shall contain releases for the Prepetition Secured Parties in respect of any matters relating to their respective loan documents arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee. |
| Governing Law and Jurisdiction: | The laws of the State of New York (except as governed by the Bankruptcy Code) shall govern this Term Sheet, except with respect to conflicts of laws.

The DIP Credit Documents will provide that the Borrower, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall submit to the exclusive jurisdiction of the Bankruptcy Court for purposes of resolving any and all disputes as may arise under the DIP Credit Documents, shall further waive any right to trial by jury, and, to the extent such waiver of the right to trial by jury is found to be unenforceable, shall include judicial reference provision substantially similar to the judicial reference provisions in the Prepetition 1L Credit Documents. |

*[Signature Pages to Follow]*

IN WITNESS HEREOF, the parties hereto have caused this Term Sheet to be executed as of the date set forth above.

FIRST-CITIZENS BANK & TRUST COMPANY,
as DIP Agent and a DIP Lender

By: _____
Name:  Sheila Colson
Title:  Managing Director


LIFESIZE, INC.
SL MIDCO 1, LLC
SL MIDCO 2, LLC
SERENOVA, LLC
LO PLATFORM MIDCO, INC.
TELSTRAT, LLC
LIGHT BLUE OPTICS, INC.,
as Borrowers


By: _____
Name: _____
Title: _____

59

THE FOREGOING IS CONSENTED TO BY:

[_____],
as [_____]


By: _____
Name:
Title:

60

THE FOREGOING IS CONSENTED TO BY:

[_____],
as [_____]

By: _____
Name:
Title:

61

**EXHIBIT A**
**TO TERM SHEET**

**CHAPTER 11 MILESTONES**

The obligations of the DIP Lenders to advance the DIP Loans shall be subject to the Debtors satisfying, or causing the satisfaction of, the milestones listed below (collectively, the "Chapter 11 Milestones") by the specified deadline (after taking into account any applicable cure period, the "Specified Deadlines") or by such later date as the DIP Agent may agree in writing.  The non-satisfaction of any Chapter 11 Milestone by the applicable Specified Deadline (and the non-waiver of such non-satisfaction by the DIP Agent in its sole and absolute discretion) shall be an Event of Default under the DIP Credit Documents.

| | Chapter 11 Milestone | Specified Deadline |
|---|---|---|
| 1. | Commencement of the Chapter 11 Cases | No later than the Target Petition Date |
| 2. | Execution by a buyer and the Debtors of an asset purchase agreement for a Sale in a form approved by the DIP Agent, and filing with the Bankruptcy Court of the DIP Motion,[1] the Bid Procedures and Scheduling Motion,[2] and such other first day papers as may be approved or requested by the DIP Agent all of which shall be in form and substance acceptable to the DIP Agent | No later than one (1) business day after the Petition Date, but in any event, before the Interim DIP Draw. |
| 3. | Entry by the Bankruptcy Court of the Interim Order[3] | No later than three (3) business days after the Petition Date |
| 4. | Entry by the Bankruptcy Court of an order approving the Bid Procedures and Scheduling Motion | No later than 25 calendar days after the Petition Date |
| 5. | Entry by the Bankruptcy Court of the Final Order (approving, among other things, the Roll-Up)[4] | No later than 35 calendar days after the Petition Date |
| 6. | The Debtors shall conduct an auction (if necessary) | No later than 55 calendar days after the Petition Date |

[1] "DIP Motion" means a motion, in form and substance acceptable to the DIP Agent, to be filed in the Bankruptcy Court, pursuant to which motion the Debtors shall seek entry of the (i) Interim Order, and (ii) Final Order.
[2] "Bid Procedures and Scheduling Motion" means a motion to approve bidding procedures and stalking horse protections in respect of the Sale, which motion and any related order, exhibits, or supplements shall be in form and substance acceptable to the DIP Agent in its sole and absolute discretion.
[3] "Interim Order" means an order of the Bankruptcy Court authorizing and approving the DIP Loans (including, without limitation, the Interim DIP Draw) on an interim basis, which order shall be consistent with the terms of this Term Sheet and be in form and substance acceptable to the DIP Agent in its sole and absolute discretion.
[4] "Final Order" means an order of the Bankruptcy Court authorizing and approving the DIP Loans on a final basis, which order shall be consistent with the terms of this Term Sheet and the other DIP Credit Documents, shall otherwise be in form and substance acceptable to the DIP Agent in its sole and absolute discretion, and shall include provisions to be specified by the DIP Agent to which the Debtors agrees.

62

| | Chapter 11 Milestone | Specified Deadline |
|---|---|---|
| 7. | Entry of an order approving the Sale | No later than 60 calendar days after the Petition Date |
| 8. | Closing of the Sale | No later than 75 calendar days after the Petition Date |

DOCS_NY 25697557006.2 52624/002

**EXHIBIT B**
**TO TERM SHEET**

**APPROVED BUDGET**

[To come]

64

## Exhibit B

## Approved Budget

65

# DIP Budget

**Lifesize, Inc. — DIP Budget**
*Confidential — Draft, Subject to Change*

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Sale Close 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending** | 5/12 | 5/19 | 5/26 | 6/2 | 6/9 | 6/16 | 6/23 | 6/30 | 7/7 | 7/14 | 7/21 | 7/28 | 8/4 | 8/11 |
| $000s | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. |
| **I. Cash Flows** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Customer Receipts | 497 | 1,229 | 1,161 | 1,209 | 1,068 | 914 | 807 | 894 | 903 | 971 | 981 | 958 | - | - |
| Estimated Sale Proceeds[1] | - | - | - | - | - | - | - | - | - | - | - | 20,735 | - | - |
| **Total Receipts** | 497 | 1,229 | 1,161 | 1,209 | 1,068 | 914 | 807 | 894 | 903 | 971 | 981 | 21,693 | - | - |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| *Operating Disbursements:* | | | | | | | | | | | | | | |
| Employee Payments / Contractors | (508) | (183) | (611) | (99) | (21) | (674) | (98) | (690) | (21) | (641) | (111) | (677) | - | - |
| AP / Vendor Payments | (312) | (948) | (669) | (603) | (768) | (609) | (743) | (558) | (545) | (474) | (604) | (928) | (152) | (54) |
| Taxes | (12) | (122) | (7) | - | - | (71) | (7) | - | - | (64) | (19) | - | - | (50) |
| **Total Operating Disbursements** | (832) | (1,254) | (1,287) | (702) | (788) | (1,354) | (849) | (1,248) | (566) | (1,179) | (734) | (1,606) | (152) | (104) |
| **Net Operating Cash Flow** | (335) | (24) | (126) | 507 | 280 | (439) | (42) | (354) | 338 | (208) | 247 | 20,087 | (152) | (104) |
| | | | | | | | | | | | | | | |
| *One-Time / Restructuring Costs:* | | | | | | | | | | | | | | |
| Professional Fees | (593) | (787) | (250) | (656) | (185) | (185) | (160) | (160) | (638) | (160) | (185) | (135) | (1,711) | (93) |
| KERP Payment | - | - | - | - | - | - | - | - | - | - | - | - | (993) | - |
| UST Quarterly Fees | - | - | - | - | - | - | - | - | - | - | (64) | - | - | (67) |
| **Total One-Time Disbursements** | (593) | (787) | (250) | (656) | (185) | (185) | (160) | (160) | (638) | (160) | (249) | (135) | (2,704) | (160) |
| **Net Change in Cash** | (928) | (812) | (376) | (149) | 94 | (625) | (202) | (514) | (300) | (368) | (2) | 19,952 | (2,856) | (264) |
| **II. Liquidity** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Beginning Balance** | 1,470 | 542 | 1,231 | 855 | 706 | 800 | 1,915 | 1,713 | 1,198 | 898 | 2,280 | 2,235 | 3,670 | 815 |
| *Net Change in Cash* | (928) | (812) | (376) | (149) | 94 | (625) | (202) | (514) | (300) | (368) | (2) | 19,952 | (2,856) | (264) |
| *DIP Borrowings / (Repayment)* | - | 1,500 | - | - | - | 1,750 | - | - | - | 1,750 | - | (5,000) | - | - |
| *DIP Roll Up Repayment[2]* | - | - | - | - | - | - | - | - | - | - | - | (13,255) | - | - |
| *DIP Interest + Fees* | - | - | - | - | - | (11) | - | - | - | - | (42) | (262) | - | - |
| **Ending Balance including DIP** | 542 | 1,231 | 855 | 706 | 800 | 1,915 | 1,713 | 1,198 | 898 | 2,280 | 2,235 | 3,670 | 815 | 551 |
| **III. Escrow Account** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Beginning Prof Fee Escrow Balance** | - | - | 185 | 371 | 556 | 742 | 927 | 830 | 990 | 1,151 | 1,311 | 1,497 | 1,129 | 1,164 |
| *Escrow Contributions* | - | 185 | 185 | 185 | 185 | 185 | 160 | 160 | 160 | 160 | 185 | 135 | 35 | 35 |
| *Court-Approved Payments* | - | - | - | - | - | - | (257) | - | - | - | - | (503) | - | (1,200) |
| **Ending Prof Fee Escrow Balance** | - | 185 | 371 | 556 | 742 | 927 | 830 | 990 | 1,151 | 1,311 | 1,497 | 1,129 | 1,164 | - |

*Note: Forecast does not include ERC proceeds*

*[1] - Purchase price subject to working capital adjustments and transfer tax liabilities.*

*[2] – Payoff of rolled up DIP obligations subject to appropriate reserve for unpaid accrued and projected administrative expenses and wind-down costs of the Debtors' estates.*

DOCS_SF:109757.1 52624/002

Document comparison by Workshare Compare on Friday, June 2, 2023 4:23:15 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/109006/2 |
| Description | DOCS_SF-#109006-v2-Lifesize_-_Entered_Interim_DIP_ Order |
| Document 2 ID | PowerDocs://DOCS_SF/109007/1 |
| Description | DOCS_SF-#109007-v1-Lifesize_-_Final_DIP_Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 223 |
| Deletions | 396 |
| Moved from | 1 |
| Moved to | 1 |