IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| In re:<br><br>LIFESIZE, INC.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-50038<br><br>(Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER: (I) AUTHORIZING THE EMPLOYMENT AND
RETENTION OF PIPER SANDLER & CO. AS INVESTMENT BANKER
FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE;
AND (II) GRANTING RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN 21 DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN 21 DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The above-captioned debtors and debtors-in-possession (each, a "Debtor" and, collectively, the "Debtors" or the "Company") hereby file this application (this "Application") for entry of an order, substantially in the form attached hereto (the "Proposed Order"): (a) authorizing the employment and retention of Piper Sandler & Co. ("PSC") as investment banker for the Debtors, effective as of the Petition Date (as defined herein), in accordance with the terms and conditions set forth in that certain engagement letter, dated as of March 23, 2023 (the "Engagement

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Lifesize, Inc. (5803); SL Midco 1, LLC (6980), SL Midco 2, LLC (9192); Serenova, LLC (9208); Telstrat, LLC (5255); LO Platform Midco, Inc. (5738); Serenova WFM, Inc. (2823); and Light Blue Optics, Inc. (7669). The Debtors' service address is 216 West Village Blvd., Suite 102, Laredo, TX 78041.

Agreement"), a copy of which is attached hereto as **Exhibit 1** to the Proposed Order; (b) approving the terms of PSC's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Agreement, as may be modified by the Proposed Order; and (c) granting related relief. In support of this Application, the Debtors submit the declaration of Joseph Denham (the "Denham Declaration"), attached hereto as **Exhibit A**. In further support of this Application, the Debtors respectfully submit as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 327, 328(a) and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 2014 and 2016, and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

4. On May 16, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these chapter 11 cases.

5. On June 5, 2023, the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), which is comprised of the following six members: (i) Calabrio, Inc.; (ii) Shareholders Representative Services LLC; (iii) Craig Malloy; (iv) Michael Helmbrecht; (v) Thomas Cameron, and (vi) Clayton Reed. *See* Docket Nos. 89 and 93.

6. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Marc Bilbao in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 13] (the "First Day Declaration").[2]

## RELIEF REQUESTED

7. The Debtors seek entry of the Proposed Order, pursuant to Bankruptcy Code sections 327, 328(a) and 1107, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, authorizing the Debtors to retain and employ PSC as investment banker for the Debtors in accordance with the terms and conditions of the Engagement Agreement, effective as of the Petition Date.

## APPLICATION

**I.  PSC's Qualifications and the Need for PSC's Services**

8. As set forth in the Denham Declaration, on March 23, 2023,[3] the Debtors hired PSC to provide investment banking services in accordance with the terms and conditions set forth in the Engagement Agreement.

---

[2] Capitalized terms used but not otherwise defined herein will have the meanings ascribed to them in the First Day Declaration or the Engagement Agreement, as applicable.

[3] As set forth in the First Day Declaration, the Debtors previously engaged PSC in October 2021 to begin exploring strategic divestments of parts of the business. By the late summer of 2022, PSC's process did not result in any offer the company believed would be in the best interests of the company's stakeholders to accept. The company re-engaged PSC in March 2023 to explore a strategic sale of the company's business.

3

9. The professionals at PSC specialize in providing high quality investment banking and financial restructuring services to debtors, creditors, and other stakeholders in bankruptcy reorganizations and other restructurings. PSC's professionals have been integral to some of the most complex restructuring transactions in public, private, and government settings. PSC has an excellent reputation for services it has rendered and its professionals have significant restructuring and industry experience.

10. PSC is an investment bank and institutional securities firm, and it serves the needs of corporations, private equity groups, public entities, non-profit entities, and institutional investors in the United States and internationally. PSC has more than 60 offices worldwide and more than 1,500 employees.

11. In light of the size and complexity of these chapter 11 cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of PSC to assist them in pursuing the transactions that are crucial to the success of these chapter 11 cases. An investment banker, such as PSC, provides a critical service that complements the services provided by the Debtors' other professionals. The Debtors seek to retain PSC as their investment banker because, among other things, PSC has extensive experience in, and an excellent reputation for, providing high quality investment banking services to debtors and creditors in chapter 11 cases and other restructurings.

12. PSC and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. PSC and its professionals have been retained as investment bankers in numerous cases, including, among others: *In re Cleveland Integrity Services, Inc.*, Case No. 23-90052 (CL) (Bankr. S.D. Tex. Mar. 10, 2023); *In re Cypress Environmental Partners, L.P.,* Case

No. 22-90039 (MI) (Bankr. S.D. Tex. July 12, 2022); *In re Honx, Inc.*, Case No. 22-90035 (MI) (Bankr. S.D. Tex. June 24, 2022); *In re CiCi's Holdings, Inc.*, Case No. 21-30146 (SGJ) (Bankr. N.D. Tex. Jan. 25, 2021); *In re GTT Commc'ns, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Oct. 31, 2021); *In re BJ Services, LLC*, Case No. 20 33627 (MI) (Bankr. S.D. Tex. July 20, 2020); *In re Garrett Motion, Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. Sept. 20, 2020); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 6, 2018); and *In re Ultra Petroleum Corp.*, Case No. 16-32202 (MI) (Bankr. S.D. Tex. Apr. 29, 2016).[4]

13.   The Debtors selected PSC as their investment banker because of, among other reasons, PSC's familiarity with the Debtors, their businesses, and industry. Since March 2023, and in addition to its previous engagement described in footnote 3, PSC has been working closely with the Debtors to pursue strategic alternatives, including but not limited to a potential sale of the Debtors' assets. Such efforts included extensive discussions with management to develop a targeted list of prospective buyers most likely to engage in immediate discussions to purchase the Debtors' business as a going-concern. Through its engagement, PSC has developed deep institutional knowledge regarding the Debtors' capital structure, liquidity needs, and business operations. Such experience has been, and will continue to be, invaluable to the Debtors in connection with the administration of these chapter 11 cases.

14.   Due to PSC's prepetition work with the Debtors, PSC is particularly well suited to provide the investment banking services for the Debtors that are contemplated by the Engagement Agreement and as described herein. Indeed, if the Debtors were required to retain an investment banker other than PSC in connection with these chapter 11 cases, the Debtors, their estates, and

---

[4]   This list contains certain cases involving current PSC professionals while at prior firms.

other parties in interest would be unduly prejudiced by the time and expense necessary to familiarize another investment banker with the intricacies of the Debtors and their business operations.

15.    Accordingly, the Debtors submit that the retention of PSC on the terms and conditions set forth herein: (a) is necessary, appropriate, and in the best interests of the Debtors' estates, creditors, and all other parties in interest; and (b) should be granted in all respects.

**II.    Scope of Services**

16.    The Debtors and PSC have entered into the Engagement Agreement, which governs the relationship between PSC and the Debtors. The terms and conditions of the Engagement Agreement were negotiated in good faith and at arm's length and reflect the parties' mutual agreement as to the substantial efforts and resources that have been and will continue to be required in connection with PSC's engagement.

17.    Subject to order of the Court, PSC will continue to perform investment banking services to the Debtors, in each case as the Debtors will request and consistent with the Engagement Agreement. Specifically, the Debtors anticipate that PSC will perform investment banking services with respect to the following, among others, in each case subject to the terms of and to the extent set forth in the Engagement Agreement and the Proposed Order and in consideration for the compensation contemplated therein:[5]

    a)    Services:

        1)    evaluate the Debtors' liquidity financing alternatives;

---

[5] The Engagement Agreement also describes various additional services that PSC would provide upon reasonable request. To the extent that there is any conflict between the actual terms of the Engagement Agreement or the Indemnification Provisions (as such may be modified by order of the Court) and any description or summary of the same in this Application, the actual terms of the Engagement Agreement or the Indemnification Provisions (as such may be modified by order of the Court) will control, as applicable.

2) determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;[6]

3) assist the Debtors in Transaction related activities, including developing marketing materials, creating and maintaining a data room and contact log, and initiating and managing contact with interested buyers throughout the process;

4) assist the Debtors in planning for dialogue and negotiations with creditors for a potential Transaction, including with respect to the creditor due diligence process and negotiations with the various creditor constituencies;

5) assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction (whether proposed by the Debtors or by a third party), in responding thereto and, if directed, in evaluating alternative proposals for a Transaction, as applicable;

6) assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction;

7) advise the Debtors with respect to, and attend, meetings of the Debtors' Board of Directors, creditor groups and other interested parties, as reasonably requested;

---

[6] As provided for in the Engagement Agreement, the term "Transaction" is defined to mean:

with respect to the [Debtors], any one or more of the following, whether in court or out of court, whether or not pursuant to a plan of reorganization or liquidation, scheme of arrangement or other similar transaction (each, a "Plan") approved or confirmed in connection with any proceeding commenced by or against the [Debtors], whether individually or on a consolidated basis under any Applicable Statute or otherwise, and whether proposed by the [Debtors] or any other party: (a) any restructuring, reorganization, recapitalization, exchange offer or consent solicitation, tender offer, conversion, refinancing, equitization, or similar transaction of any of the [Debtors'] outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), obligations, claims or liabilities (including, without limitation, partnership interests, lease obligations, trade claims, general unsecured claims, preferred stock or other contract or tort obligations); (b) any transaction or series of related transactions involving an acquisition, merger, consolidation, or any other business combination pursuant to which a majority of the business, equity or assets of the [Debtors] are, directly or indirectly, sold, purchased or combined with another person, entity or company, including, without limitation, any sale transaction under Bankruptcy Code §§ 363, 1129 or any other provision of the Bankruptcy Code and/or in connection with any credit bid(s), or (c) any transaction or series of transactions similar to any of the foregoing. As used herein, the term "Applicable Statute" will mean (i) title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or (ii) the bankruptcy, insolvency or similar law of any other jurisdiction (each, an "Other Bankruptcy Law", and any proceeding under the Bankruptcy Code or Other Bankruptcy Law, a "Bankruptcy Proceeding"). Notwithstanding the foregoing, a Transaction will not include a liquidation of the [Debtors] pursuant to a chapter 11, chapter 7 or otherwise and/or a wind-down where an acquisition, merger, consolidation, or any other business combination, including pursuant to a §363 auction, has not otherwise occurred.

> 8) participate in hearings before the Court and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan; and
>
> 9) render such other investment banking services as may be agreed upon by PSC and the Debtors.

18. The services that PSC will provide to the Debtors are necessary to assist the Debtors with their restructuring efforts and to maximize the value of the Debtors' estates. The resources, capabilities, and experience of PSC in advising the Debtors are important to the Debtors' chapter 11 efforts. A highly qualified investment banker like PSC fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

### III. Professional Compensation

19. Investment bankers such as PSC do not charge for their services on an hourly basis. Instead, they customarily charge fees that are contingent upon the occurrence of a specified type of transaction. PSC and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure") in accordance with the terms of the Engagement Agreement and pursuant to Bankruptcy Code section 328(a), and not section 330:

> a) **Monthly Fee**. Whether or not a Transaction is proposed or consummated, a monthly fee (a "Monthly Fee") of $125,000 per month. The Monthly Fee is payable by the Debtors upon receipt of an invoice for the corresponding month.
>
> b) **Transaction Fee.** A fee (the "Transaction Fee") of $1,750,000, payable upon the consummation of any Transaction. For the avoidance of doubt, if the Debtors are subject to multiple Transactions, only one Transaction Fee will be payable.
>
> c) **New Capital Fee.** A new capital fee (each, a "New Capital Fee") equal to 2.5% of the face amount of any new capital provided through any senior secured Financing[7] raised, including, without

---

[7] As provided for in the Engagement Agreement, the term "Financing" is defined to mean:

any transaction or series of transactions involving the public or private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked or debt securities, instruments, or obligations of the [Debtors] or any of [their] affiliates, as well as any federal, state or local government loan, grant or

8

        limitation, any senior secured debtor-in-possession financing raised exclusive of any pre-petition secured amounts that may be rolled up into any such debtor-in-possession financing (a "<u>New Capital Raise</u>"). The New Capital Fee will be earned and payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, (x) there may be multiple New Capital Fees if there are multiple transactions by which the new capital is committed and (y) the term "raised" will include the amount committed or otherwise made available to the Debtors whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Debtors.

   d) **Expense Reimbursement.** In addition to the fees described above, the Debtors agree to reimburse PSC for all reasonable expenses incurred during the engagement, including, but not limited to, travel and lodging, research, data processing and communication charges, regulatory and courier services and fees, and reasonable fees and expenses of PSC's counsel (without the requirement that the retention of such counsel be approved by the Court) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

### Crediting

   a) Commencing after three (3) full Monthly Fees have been earned and paid (excluding the initial Monthly Fee, if such fee was for less than a full calendar month), one hundred percent (100%) of the Monthly Fees thereafter will be credited against any Transaction Fee (the "<u>Monthly Fee Credit</u>"); provided that the Monthly Fee Credit will not exceed the Transaction Fee.

   b) Fifty percent (50%) of the New Capital Fee will be credited against any Transaction Fee (the "<u>New Capital Fee Credit</u>"); provided that the New Capital Fee Credit will not exceed the Transaction Fee.

20.    The Debtors believe that the Fee Structure set forth in the Engagement Agreement is reasonable. The Fee Structure appropriately reflects the nature of the services to be provided by

---

   investment, and including any debtor-in possession financing, rights offering, private placement or exit financing in connection with a Bankruptcy Proceeding.

PSC and the fee structures typically used by leading investment banking firms of similar stature to PSC for comparable engagements, both in and out of court. The Fee Structure is consistent with PSC's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined herein. Moreover, the Fee Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) PSC's substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by PSC in these chapter 11 cases.

21. In light of the foregoing, and given the numerous issues that PSC may be required to address in the performance of its services under the Engagement Agreement, PSC's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PSC's services for engagements of this nature both in the in- and out-of-court contexts, the Debtors believe that the Fee Structure is fair, reasonable, and market-based under the standards set forth in Bankruptcy Code section 328(a).

22. PSC intends to file fee applications in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Engagement Agreement, and any additional procedures that have been or may be established by the Court in these chapter 11 cases.

23. PSC has agreed to accept compensation for its services in these chapter 11 cases as such sums may be allowed by the Court. PSC understands that interim and final fee awards are subject to approval by the Court.

24. In accordance with Bankruptcy Code section 504, as set forth in the Denham Declaration, there is no agreement or understanding between PSC and any other entity, other than

the members and employees of PSC, for the sharing of compensation received or to be received for services rendered in connection with these chapter 11 cases.

## IV. Payments to PSC Prior to the Petition Date

25.    During the 90-day period prior to the Petition Date, the Debtors paid PSC $226,774.19 in fees and expense reimbursements due under the Engagement Agreement in the ordinary course of business.

## V. PSC's Disinterestedness

26.    As set forth in further detail in the Denham Declaration, PSC has certain connections with creditors, equity security holders, and other parties in interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. The parties do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases. Accordingly, to the best of the Debtors' knowledge, information and belief, PSC does not hold or represent any interest adverse to the Debtors or their estates.

27.    Based on the Denham Declaration, the Debtors submit that PSC is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a). To the extent that any new relevant facts or relationships bearing on the matters described herein are discovered or arise during the period of PSC's retention, PSC will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

28.    As of the Petition Date, PSC did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the engagement.

**VI.     No Duplication of Services**

29.     The Debtors believe that the services provided by PSC will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, PSC will carry out unique functions directly related to potential transactions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

**VII.    Recordkeeping Requirements**

30.     It is not the general practice of investment banking firms, including PSC, to keep detailed time records similar to those customarily kept by attorneys.  PSC does not maintain contemporaneous time records in one-tenth hour (0.1) increments or provide or conform to a schedule of hourly rates for its professionals.  Moreover, the Fee Structure does not rely on the amount of time spent by PSC but instead is results-driven and will be determined by the ultimate success of PSC's efforts to consummate a transaction successfully.  Notwithstanding that PSC does not charge for its services on an hourly basis, PSC will maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professional rendering such services on behalf of the Debtors. Moreover, the Debtors respectfully request that PSC's professionals not be required to keep time records on a "project category" basis, that its non-investment banking professionals and personnel in administrative departments (including legal) not be required to maintain any time records and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that PSC would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive or excuse compliance with such requirements or guidelines.

31. PSC will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. PSC's application for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Agreement, in accordance with Bankruptcy Local Rule 2016-1 and any procedures established by the Court.

**VIII. Indemnification, Contribution, and Expense Reimbursement Provisions**

32. The Debtors have agreed, among other things, to indemnify and to provide contribution and reimbursement to PSC and certain related parties in accordance with the indemnification provisions contained in the terms and conditions attached as Annex A to the Engagement Agreement (the "<u>Indemnification Provisions</u>").

33. The Debtors believe that such provisions are customary and reasonable for PSC's engagement. Unlike the market for other professionals that the Debtors may retain, such provisions are standard terms of the market for investment bankers. PSC and the Debtors believe that such provisions are comparable to those generally obtained by investment banking firms of similar stature to PSC and for comparable engagements, both in and out of court.

34. Moreover, the Indemnification Provisions were fully negotiated between the Debtors and PSC at arm's length and in good faith. Nevertheless, after further consultation and negotiation, the Debtors and PSC agreed to modify and limit the Indemnification Provisions as stated in the Proposed Order. Such Indemnification Provisions, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as PSC in chapter 11 cases in this jurisdiction.

35. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions.

**BASIS FOR RELIEF**

36. Bankruptcy Code section 327(a) provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Bankruptcy Code section 1107(b) provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

37. Additionally, Bankruptcy Code section 328(a) provides, in relevant part, that the debtor, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).

38. Accordingly, Bankruptcy Code section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrett Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

39. Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other Party-in-Interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).[8]

40. The Debtors submit that the Court's approval of the Debtors' retention of PSC in accordance with the terms and conditions of the Engagement Agreement, including the Fee Structure, expense reimbursement and Indemnification Provisions, is warranted. First, the requirements of Bankruptcy Code section 327 are satisfied. PSC is needed postpetition to assist with negotiations, facilitate transactions, enable the Debtors to discharge their duties as debtors and debtors in possession and, to the extent necessary, provide expert advice and testimony regarding matters related to transactions contemplated by the Engagement Agreement. PSC has extensive experience and an excellent reputation in providing high-quality investment banking services, both in- and out-of-court. The Debtors submit that PSC is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

41. Second, the Debtors maintain that the Fee Structure is market-based, fair, and reasonable under the standards set forth in Bankruptcy Code section 328(a). The Fee Structure reflects PSC's commitment to the variable level of time and effort necessary to perform the

---

[8] Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application and the Denham Declaration.

services to be provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the chapter 11 context.

42. Indeed, PSC's industry and restructuring experience, capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of PSC's engagement, were important factors in determining the Fee Structure. The ultimate benefit to the Debtors of PSC's services could not be measured merely by reference to the number of hours to be expended by PSC's professionals in the performance of such services. Moreover, the Fee Structure takes into consideration PSC's anticipation that it will need to provide a substantial commitment of professional time and effort to perform its duties under the Engagement Agreement and in light of the fact that such commitment may foreclose other opportunities for PSC. Further, the commitment required of PSC and its professionals to render services to the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for PSC.

43. Thus, because of PSC's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that PSC has devoted and will continue to devote to this engagement, the Debtors request that the Court approve the Fee Structure pursuant to Bankruptcy Code section 328(a) and that the Court evaluate PSC's final compensation and reimbursement of expenses in these chapter 11 cases under the standards of Bankruptcy Code section 328(a) rather than Bankruptcy Code section 330, subject to PSC filing a final fee application seeking approval of the payment of its fees and expenses.

44. Third, the Indemnification Provisions, as modified by the Proposed Order, are reasonable under the circumstances and reflect market conditions, and accordingly they should be

approved under Bankruptcy Code section 328. Courts in this jurisdiction have approved similar provisions to the Indemnification Provisions in other chapter 11 cases.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

45. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

46. Notice of the hearing on the relief requested in this Application will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and the Debtors submit that such notice is sufficient under the circumstances. The Debtors will provide notice to parties in interest, including on the Debtors' Master Service List.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  June 13, 2023                                       LIFESIZE, INC.

*/s/ Marc Bilbao*
Marc Bilbao, solely in his capacity as Co-Chief Restructuring Officer of Lifesize, Inc., et al., and not in any other capacity

### Certificate of Service

I certify that on June 13, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen

DOCS_LA:349228.4 52624/002