**Exhibit A**

**Denham Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| LIFESIZE, INC., | Case No. 23-50038 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF JOSEPH DENHAM
IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER:  (I) AUTHORIZING THE EMPLOYMENT AND
RETENTION OF PIPER SANDLER & CO., AS INVESTMENT BANKER
FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE;
AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Joseph Denham, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Managing Director at the investment banking firm Piper Sandler & Co. ("PSC"), which has its principal office at 800 Nicollet Mall, Suite 900, Minneapolis, MN 55402. I am authorized to make this declaration (the "Declaration") on behalf of PSC in support of the *Debtors' Application for Entry an Order:  (I) Authorizing the Employment and Retention of Piper Sandler & Co. as Investment Banker for the Debtors*, *Effective as of the Petition Date; and (II) Granting Related Relief* (the "Application").[2]

2.      Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with the Debtors' senior management, other members of the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Lifesize, Inc. (5803); SL Midco 1, LLC (6980), SL Midco 2, LLC (9192); Serenova, LLC (9208); Telstrat, LLC (5255); LO Platform Midco, Inc. (5738); Serenova WFM, Inc. (2823); and Light Blue Optics, Inc. (7669). The Debtors' service address is 216 West Village Blvd., Suite 102, Laredo, TX 78041.

[2] Capitalized terms used but not defined below are defined in the Application.

PSC team, or other interested parties, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs. If I were called to testify, I would testify competently to the facts set forth below.

## Professional Background and Qualifications

3.      I have more than 15 years of experience in providing financial advice to clients in corporate transactions and restructurings. Prior to joining PSC, I was a managing director and a member of the founding team of TRS Advisors. Before that, I was a member of the restructuring and M&A advisory businesses at Rothschild, and prior to that with Ernst and Young.  I hold a First Class Master's Degree in economics from Edinburgh University and I am a chartered accountant with the Institute of Chartered Accountants of Scotland.

## PSC's Qualifications

4.      The professionals at PSC specialize in providing high quality investment banking and financial restructuring services to debtors, creditors, and other stakeholders in bankruptcy reorganizations and other restructurings. PSC's professionals have been integral to some of the most complex restructuring transactions in public, private, and government settings. PSC has an excellent reputation for services it has rendered and its professionals have significant restructuring and industry experience.

5.      PSC is an investment bank and institutional securities firm, and it serves the needs of corporations, private equity groups, public entities, non-profit entities, and institutional investors in the United States and internationally. PSC has more than 60 offices worldwide and more than 1,500 employees.

6.      PSC and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-

2

court and in chapter 11 cases. PSC and its professionals have been retained as investment bankers in numerous cases, including, among others: *In re Cleveland Integrity Services, Inc.*, Case No. 23-90052 (CL) (Bankr. S.D. Tex. Mar. 10, 2023); *In re Cypress Environmental Partners, L.P.,* Case No. 22-90039 (MI) (Bankr. S.D. Tex. July 12, 2022); *In re Honx, Inc.*, Case No. 22-90035 (MI) (Bankr. S.D. Tex. June 24, 2022); *In re CiCi's Holdings, Inc.*, Case No. 21-30146 (SGJ) (Bankr. N.D. Tex. Jan. 25, 2021); *In re GTT Commc'ns, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Oct. 31, 2021); *In re BJ Services, LLC*, Case No. 20 33627 (MI) (Bankr. S.D. Tex. July 20, 2020); *In re Garrett Motion, Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. Sept. 20, 2020); *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 11, 2019); *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. Apr. 6, 2018); and *In re Ultra Petroleum Corp.*, Case No. 16-32202 (MI) (Bankr. S.D. Tex. Apr. 29, 2016.[3]

7.      In In light of the size and complexity of these chapter 11 cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of PSC to assist them in pursuing the transactions that are crucial to the success of these chapter 11 cases. An investment banker, such as PSC, provides a critical service that complements the services provided by the Debtors' other professionals. The Debtors seek to retain PSC as their investment banker because, among other things, PSC has extensive experience in, and an excellent reputation for, providing high quality investment banking services to debtors and creditors in chapter 11 cases and other restructurings.

8.      The Debtors engaged PSC on March 23, 2023 to provide investment banking services in accordance with the terms and conditions set forth in the Engagement Agreement.  The Debtors had previously engaged PSC in October 2021 to begin exploring strategic divestments of

---

[3] This list includes certain cases involving current PSC professionals while at prior firms.

parts of the business.  By the late summer of 2022, PSC's process did not result in any offer the company believed would be in the best interests of the company's stakeholders to accept. The company re-engaged PSC in March 2023 to explore a strategic sale of the company's business. Over the past several months, PSC has engaged in extensive due diligence of the Debtors' businesses, including their operations, assets, capital structure, contractual arrangements, cash flows, and liquidity to build a foundation for a restructuring strategy.

9.      As a result of the prepetition work performed by PSC on behalf of the Debtors, PSC has acquired significant knowledge of the Debtors' financial affairs, business operations, capital structure, assets, key stakeholders, financing documents and other related material information. Likewise, in providing services to the Debtors, PSC's professionals have worked closely with the Debtors' management, the Board, and the Debtors' other advisors. If the Application is approved, several of PSC's professionals, all with  substantial expertise in the areas discussed above, will continue to provide services to the Debtors and will work closely with the Debtors' management, the Board and the Debtors' other professionals throughout the reorganization process. Accordingly, as a result of PSC's representation of the Debtors prior to and after the commencement of these chapter 11 cases, coupled with PSC's extensive experience representing chapter 11 debtors, PSC is well qualified to provide these services and represent the Debtors during these chapter 11 cases.

**Services Provided by PSC**

10.     The services to be provided by PSC for the Debtors, as more fully described in the Engagement Agreement and the Application, are necessary to assist the Debtors with their restructuring efforts and to maximize the value of the Debtors' estates.  The resources, capabilities, and experience of PSC in advising the Debtors are important to the Debtors' chapter 11 efforts.  A

highly qualified investment banker like PSC fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

**Professional Compensation**

11.     In consideration of the services to be provided by PSC, and as more fully described in the Engagement Agreement and the Application, the Debtors and PSC have agreed that PSC will, in respect of its services, be compensated under the Fee Structure.

12.     The Fee Structure is consistent with PSC's typical fees for work of this nature. The fees are set at a level designed to compensate PSC fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is PSC's policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

13.     The Fee Structure is comparable to those generally charged by investment banking firms of similar stature to PSC and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee and a contingency amount that is tied to the consummation and closing of certain transactions as contemplated in the Engagement Agreement.

14.     The Engagement Agreement was negotiated at arm's-length and in good faith, and I believe that the provisions contained therein are reasonable and market-based terms and conditions of PSC's employment by the Debtors.

15.     Other than as set forth above, there is no proposed arrangement between the Debtors and PSC for compensation to be paid in this case. PSC has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

16.     PSC is willing to be retained by the Debtors as their investment banker and will make appropriate applications to this Court pursuant to the Bankruptcy Code for compensation

DOCS_LA:349228.4 52624/002

and reimbursement of out-of-pocket expenses, all in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules and any orders of this Court.

17.     However, because (i) it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys, (ii) PSC's compensation is based on a Monthly Fee and Transaction Fee that do not vary based on hours worked, and (iii) PSC's personnel do not ordinarily maintain their time records on a "project category" basis, PSC requests that its professionals only maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in one-half hour increments) and the identity of the professionals who provided those services. Moreover, PSC respectfully requests that its professionals not be required to keep time records on a "project category" basis, that its non-investment banking professionals and personnel in administrative departments (including legal) not be required to maintain any time records and that it not be required to provide or conform to any schedule of hourly rates. To the extent that PSC would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or other applicable procedures and orders of the Court, PSC respectfully requests that this Court waive or excuse compliance with such requirements or guidelines.

18.     PSC intends to file fee applications in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Engagement Agreement, and any additional procedures that have been or may be established by the Court in these chapter 11 cases.

19.    During the 90-day period prior to the Petition Date, the Debtors paid PSC $226,774.19 in fees and expense reimbursements due under the Engagement Agreement in the ordinary course of business.

### Indemnification

20.    With respect to the Engagement Agreement's indemnification, reimbursement, and contribution provisions, as summarized in the Application and more fully described in the Indemnification Provisions, unlike the market for other professionals that a debtor may retain, indemnification is a standard term of the market for investment banker engagements. The indemnity, moreover, is comparable to those generally obtained by investment banking firms of similar stature to PSC and for comparable engagements, both in and out of court. The indemnification, reimbursement, and contribution provisions of the Engagement Agreement were fully negotiated by the Debtors and PSC at arm's-length and in good faith, and I respectfully submit that these indemnification, reimbursement, and contribution provisions of the Engagement Agreement, as modified by the Proposed Order, are customary and reasonable.

### Efforts to Avoid Duplication of Services

21.    PSC's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases. PSC understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will use its reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

### Disinterestedness

22.    PSC is a securities broker-dealer registered with the Securities and Exchange Commission ("SEC") and a direct subsidiary of Piper Sandler Companies ("Piper Holdings"), a

publicly listed company on the New York Stock Exchange. The Piper Sandler Corporate Group (defined below) conducts all of its U.S. investment banking business, including the assignment for the Debtors, out of PSC. Through Piper Holdings, PSC has affiliate relationships with dozens of other direct and indirect subsidiaries of Piper Holdings located worldwide (collectively, the "Affiliated Entities" and, together with Piper Holdings and PSC, the "Piper Sandler Corporate Group"). As a matter of policy, and as described more fully below, PSC generally does not share confidential information about its investment banking clients, including the Debtors, beyond the investment banking teams providing services to those clients and certain internal groups that support investment banking (*e.g.*, legal and compliance).

23.     PSC maintains robust policies and procedures that are reasonably designed to segment, detect and prevent the misuse of inside information. These policies and procedures are subject to regulatory oversight and audit by the SEC and Financial Industry Regulatory Authority. These policies apply to, and there are information barriers in place between, the investment banking team rendering services to the Debtors, on the one hand, and each of the Affiliated Entities, on the other. These information barriers consist of physical and electronic barriers that restrict the flow of information among employees and business divisions, including confidential information. These policies and barriers have been reasonably designed to ensure, among other things, that no client confidential information held by PSC, including confidential or non-public information concerning the Debtors, is available to employees outside of investment banking, and that client confidential information is shared within PSC only on a need-to-know basis. More specifically, these information barriers are intended to prevent professionals on the public side of the informational wall (*i.e.*, sales, trading, research and asset management professionals) from having access to information on the private side of the wall (*i.e.*, investment banking).

8

24.     These policies also provide that PSC's team rendering services to the Debtors are prohibited from sharing the Debtors' confidential information with other employees of the Piper Sandler Corporate Group without prior review and approval by the relevant legal and compliance department, and they may only share such information internally within PSC with employees who need to know such information for purposes of advising the Debtors.[4]

25.     In connection with the preparation of this Declaration, PSC conducted a review of its contacts with the Debtors, their affiliates, and certain entities holding claims against or interests in the Debtors that were made reasonably known to PSC. A list of the parties reviewed is reflected on **Schedule 1** to this Declaration (the "Potential Parties in Interest List"). PSC's review, completed under my supervision, consisted of PSC comparing such names to the names in PSC's electronic client databases to identify any relationship PSC may have with any of the parties on the Potential Parties in Interest List. In addition, PSC issued a general inquiry to its investment banking employees with respect to the Debtors and certain potential parties in interest. A summary of such relationships that PSC identified during this process is set forth on **Schedule 2** to this Declaration.

26.     To the best of my knowledge and belief, PSC has not, within the preceding three years, represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets or businesses and has only represented Potential Parties in Interest in matters unrelated to these chapter 11 cases to the extent set forth herein and in **Schedule 2** attached hereto.

---

[4] The information barriers described in herein do not apply to (i) general communications as to the nature of the engagement with senior management of the Piper Sandler Corporate Group who, due to their duties and responsibilities, have a legitimate need to know such information, where such individuals are informed as to the confidential nature of such information, and (ii) legal and compliance, accounting and other internal control functions within the Piper Sandler Corporate Group that need to know such information for purposes of carrying out their control functions.

27.     To the best of my knowledge and belief, neither PSC, nor I, nor any other employee of PSC that will work on the Debtors' engagement, has any connection with or holds any interest adverse to the Debtors, their estates, or the Potential Parties in Interest, except (i) to the extent set forth in **Schedule 2** and (ii) as otherwise set forth below:

i.      PSC is a large investment banking firm and likely has provided or is providing services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct and/or in the future may conduct business with the Debtors and who may be creditors of the Debtors. To the best of my knowledge, based on the process described herein, PSC's services to these parties were and are wholly unrelated to the Debtors, their estates or these chapter 11 cases. PSC will continue to provide professional services to Potential Parties in Interest in these chapter 11 cases; *provided* that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

ii.     In the ordinary course of their diverse businesses, PSC appears in numerous cases, proceedings and transactions involving many different banking and financial institutions and attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of which may be or represent claimants and parties in interest in these chapter 11 cases. Furthermore, PSC has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these chapter 11 cases. To the best of my knowledge, based on the process described herein and my current knowledge of the banking and financial institutions and professionals involved, none of these connections represent an interest adverse to the Debtors or their estates.

iii.    PSC provides financial advisory and investment banking services to a wide variety of clients. As a result, PSC may have represented, and may in the future represent, certain parties in interest in matters unrelated to these chapter 11 cases, either individually or as part of representation of an ad hoc or official committee of creditors or interest holders. To the best of my knowledge, based on the process described herein, none of these connections represent an interest adverse to the Debtors or their estates.

iv.     PSC pays taxes to, and has other ordinary course interactions with, taxing authorities in a number of different jurisdictions, some of which may be among the parties in interest in these chapter 11 cases. To the best of my knowledge, based on the process described herein and my current knowledge of the taxing authorities involved, none of these connections represent an interest adverse to the Debtors or their estates.

10

v.        Certain employees presently employed by PSC may have been formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, certain of the parties in interest. While employed by other firms, certain professionals presently employed by PSC may have represented certain parties in interest in matters unrelated to these chapter 11 cases.

vi.      Members of PSC may be involved in litigation from time to time that may, or may in the future, involve entities that may be parties in interest. Certain of the parties in interest may also be vendors or insurers of members of PSC or have other noninvestment banking relationships with members of the Piper Sandler Corporate Group.

28.     PSC is not a "creditor" of any of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, except as otherwise set forth herein, neither I nor any other member of the PSC engagement team serving the Debtors, to the best of my knowledge, (a) is a creditor, equity security holder, or insider of any of the Debtors; (b) is or has been within two years before the Petition Date, a director, officer, or employee of any of the Debtors; or (c) has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. As such, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, PSC (i) is a "disinterested person" as defined in Bankruptcy Code section 101(14) and (ii) neither holds nor represents an interest adverse to the Debtors or their estates. Therefore, I believe that PSC is eligible to represent the Debtors under Bankruptcy Code sections 327 and 328.

29.     The foregoing constitutes the statement of PSC pursuant to Bankruptcy Rule 2014-1(a).

30.     It is PSC's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material relevant facts or

11

relationships are discovered or arise, PSC will file a supplemental declaration pursuant to Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 13, 2023                   _/s/ Joseph Denham_____
                                        Joseph Denham

**Schedule 1**

**Potential Parties in Interest**

**Lifesize, et al.:  Potential Parties In Interest[1]**

Parties-in-Interest Reviewed for Current and Recent Former Relationships

**SCHEDULE 1**

| Category | Parties-in-Interest |
|---|---|
| Equity Holders | Marlin SL Topco, LP |
| | Marlin LO Holdings, LP |
| | Marlin Heritage, LP |
| | Marlin Heritage II, LP |
| U.S. Trustee Personnel, Judges & Court Contacts (& Key Staff Members) | Albert Alonzo |
| | Alicia McCullar |
| | Ana Castro |
| | Aubrey Thomas |
| | Barbara Griffin |
| | Chief Judge David R. Jones |
| | Christy Simmons |
| | Clarissa Waxton |
| | Darlene Hansen |
| | David J. Bradley |
| | Eduardo V. Rodriguez |
| | Glenn Otto |
| | Gwen Smith |
| | Hector Duran |
| | Henry G. Hobbs, Jr. |
| | Jacqueline Boykin |
| | Jana Whitworth |
| | Jayson B. Ruff |
| | Jeannie Andresen |
| | Jeannie Chavez |
| | Judge Christopher M. Lopez |
| | Judge Eduardo V. Rodriguez |
| | Judge Jeffrey P. Norman |
| | Judge Marvin Isgur |
| | Kimberly Picota |
| | Linda Motton |
| | LinhThu Do |
| | Luci Johnson-Davis |

---

[1]   This list (and the categories contained herein) are for purposes of a conflicts check and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that otherwise would fall under multiple categories is likely to be listed under only one category.

1

| | |
|---|---|
| | Mario Rios<br>Nathan Ochsner<br>Patricia Schmidt<br>Rosario Saldana<br>Southern District of Texas<br>Stephen Statham<br>Tracey Conrad<br>Tyler Laws<br>Vriana Portillo |
| Bankruptcy Professionals | Pachulski Stang Ziehl & Jones LLP<br>Kurtzman Carson Consultants (KCC) LLC<br>FTI Consulting, Inc.<br>Piper Sandler & Co. |
| Banks/Lender/UCC Lien Parties/Administrative Agents | Silicon Valley Bank<br>First Citizens Bank<br>Bank of America<br>Cliffwater<br>Columbia Lake Partners Growth Lending I (LUXCO) S.A.R.L.<br>Employment Development Department<br>SVB Innovation Credit Fund VIII, L.P.<br>Technology Finance Corporation<br>Dell Financial Services LLC<br>De Lage Landen Financial Services, Inc.<br>Marlin LO Holdings LP<br>Hewlett-Packard Financial Services Company |
| Competitors | Talkdesk<br>Five9 Inc. |
| Current Board of Directors | Greg Ruffini<br>Ryan Wald |
| Current Officers | Marc Bilbao<br>Michael Yoshimura |
| Insurance Providers/Insurance Brokers | Lockton Companies LLC<br>CNA Insurance<br>IPFS Insurance<br>Valley Forge Insurance Company<br>Continental Insurance Company<br>AXA XL<br>Westchester Fire Insurance Co.<br>Endurance American Specialty Insurance Company |
| Parties to Litigation | Lockton Companies LLC<br>IPFS Insurance<br>Valley Forge Insurance Company |
| Top 30 Unsecured Creditors | Logitech International, S.A. |

DOCS_LA:349228.4 52624/002

| | |
|---|---|
| | Meritech Capital Lifesize LLC |
| | Redpoint Omega II, LP |
| | SH Lifesize, LLC |
| | Craig Malloy |
| | Silicon Valley Bank |
| | Escalate Capital Partners SBIC III, LP |
| | Calabrio, Inc |
| | Tippet Lifesize, LLC |
| | Oracle America, Inc. |
| | Persistent Systems Limited |
| | Blue Jeans Network, Inc. |
| | Benchmark Electronics (M) SDN BHD |
| | Twilio Inc. |
| | Michael Helmbrecht |
| | Appsmart Agent Services, Inc. |
| | Radianz Americas Inc. |
| | Tom Cameron |
| | Clayton Reed |
| | Focus Services LLC |
| | InsightSoftware, LLC |
| | BCM Advanced Research |
| | Bobby Beckmann |
| | ValueLabs Inc |
| | Enoch Kever PLLC |
| | Redpoint Omega Associates II, LLC |
| | Brandywine Realty Trust |
| | Farnam Street Financial, Inc. |
| Debtors | LifeSize, Inc. |
| | SL Midco 1, LLC |
| | SL Midco 2, LLC |
| | Serenova, LLC |
| | Telstrat, LLC |
| | LO Platform Midco, Inc. |
| | Serenova WFM, Inc. |
| | Light Blue Optics, Inc. |
| Former Names of Debtors | LiveOps Cloud Platform, LLC |
| Non-Debtors | Lifesize Technologies UK Ltd |
| | Lifesize Italia SRL |
| | LiveOps Cloud Platform Canada, Inc |
| | Lifesize India Pvt. Ltd. |
| | Lifesize France SARL |
| | LiveOps UK LTD. |
| | Lifesize GmbH |
| | Loxysoft WFM AB |
| | LiveOps New Zealand Ltd. (NZ) |
| | Lifesize Japan K.K. |

3

|  | Lifesize Australia PTY. LTD. |
|  | Lifesize Singapore Pte. Ltd |
|  | Lifesize India Pvt. Ltd. |
| Other Parties | Enghouse Systems Ltd |
|  | Enghouse Interactive, Inc. |
| Governmental Units | Federal Communications Commission |
| Major Benefits Administrators or Additional Third-Party Administrators | Automatic Data Processing, Inc. (ADP) |
|  | Avalara |
|  | Celeritas Business Solutions LLP |

4

**Schedule 2**

**Engagements with Potential Parties in Interest**

PSC has provided, within the preceding three years, or is currently providing financial advisory or other services to the following non-Debtor Potential Parties in Interest or related parties thereto, in each case in matters unrelated to the Debtors and these Chapter 11 Cases (unless otherwise noted):

| Individual / Entity | Relationship to Debtors | Status | Relationship to PSC & Affiliates |
|---|---|---|---|
| Bank of America | Bank / Lender / UCC Lien Party / Administrative Agent | Current | Sales & Trading Client |
| First Citizens Bank | Bank / Lender / UCC Lien Party / Administrative Agent | Current | Sales & Trading Client |
| PNC Bank | Bank / Lender / UCC Lien Party / Administrative Agent | Current | Sales & Trading Client |
| Silicon Valley Bank | Bank / Lender / UCC Lien Party / Administrative Agent | Current | Sales & Trading and Investment Banking Client |
| Wells Fargo | Bank / Lender / UCC Lien Party / Administrative Agent | Current | Sales & Trading and Investment Banking Client |
| AXA XL | Insurance Provider / Insurance Broker | Current | Investment Banking Client |
| Avalara, Inc. | Major Benefits Administrator or Add'l Third-Party Administrator | Past | Investment Banking Client |
| Calabrio, Inc. | Unsecured Creditor | Past | Investment Banking Client |
| Escalate Capital Partners | Unsecured Creditor | Past | Investment Banking Client |
| Meritech Capital | Unsecured Creditor | Past | Investment Banking Client |