## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LIFESIZE, INC., | Case No. 23-50038 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF CANCELLATION OF AUCTION,
## WINNING BIDDER FOR SALE OF THE DEBTORS' ASSETS,
## SALE HEARING, AND PROPOSED FORM OF SALE ORDER
(Related Docket No. 123)

**PLEASE TAKE NOTICE THAT:**

1.     On June 22, 2023, the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), after having approved the Bid Procedures on the record of the hearing held June 6, 2023, entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures* [Docket No. 123] (the "**Bid Procedures Order**"),[2] authorizing, among other things, the Debtors to conduct an auction (the "**Auction**") to select a party or parties to purchase substantially all the Debtors' assets (the "**Assets**" and the "**Sale**") after having already received the Stalking Horse Bid—an offer by Enghouse Interactive, Inc. to purchase the Assets. The Auction would have been conducted among Enghouse Interactive and any other party submitting a Qualified Bid by the Bid Deadline of June 22, 2023.

2.     No Qualified Bids for the Assets other than the Stalking Horse Bid were received by the Debtors by the Bid Deadline or otherwise. Accordingly, no Auction will be held with respect to the Assets, and the Debtors have declared Enghouse Interactive as the Successful Bidder.

3.     Debtors intend to seek approval of the Sale to Enghouse Interactive at the Sale Hearing scheduled for **July 7, 2023**, at **10:00 a.m. (Central Time)** (the "**Sale Hearing**"), before the U.S. Bankruptcy Court, Hon. David R. Jones, United States Courthouse, 515 Rusk Street, Houston, Texas 77002.  Parties may participate in the Sale Hearing in person or by audio and video connection.

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Lifesize, Inc. (5803); SL Midco 1, LLC (6980), SL Midco 2, LLC (9192); Serenova, LLC (9208); Telstrat, LLC (5255); LO Platform Midco, Inc. (5738); Serenova WFM, Inc. (2823); and Light Blue Optics, Inc. (7669).  The Debtors' service address is 216 West. Village Blvd., Suite 102, Laredo, TX 78041.

[2]     Capitalized terms used but not defined in this notice are defined in the Bid Procedures Order.

DOCS_LA:349775.3 52624/002

4.      Any objections to the approval of Enghouse Interactive as the Successful Bidder or the Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual bases for the objection; and (d) be filed with the Court by **July 3, 2023**, **at 4:00 p.m. (Central Time)**.

5.      **ANY PARTY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE WILL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE STALKING HORSE PURCHASE AGREEMENT.**

6.      At the Sale Hearing, the Debtors intend to seek the Bankruptcy Court's entry of an order approving the Sale to Enghouse Interactive substantially in the form attached to this notice as **<u>Exhibit A</u>**.

7.      For parties wishing to participate at the Sale Hearing by audio and video connection, audio communication will be by the use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Jones's homepage.  The meeting code is "JudgeJones."  Click the settings icon in the upper right corner and enter your name under the personal information setting.

8.      Appearances at the Sale Hearing must be made electronically in advance of the Hearing.  To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.

9.      All documents filed in this chapter 11 case are available free of charge by visiting http://www.kccllc.net/lifesize.  Copies of any pleadings or papers filed with the Court may be obtained by visiting the Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of Page Intentionally Left Blank]*

Dated:  June 26, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen (SBT 24102623)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
bwallen@pszjlaw.com

and

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Cia H. Mackle (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
jpomerantz@pszjlaw.com
jkroop@pszjlaw.com
cmackle@pszjlaw.com

*Proposed Counsel to the Debtors in Possession*

## Certificate of Service

I certify that on June 26, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Benjamin L. Wallen*
Benjamin L. Wallen

**Exhibit A**

**Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| LIFESIZE, INC. *et al.*, | ) | Case No. 23-50038 (DRJ) |
|  | ) |  |
| Debtors.[1] | ) |  |
|  | ) |  |
|  | ) |  |

**ORDER (I) APPROVING THE SALE OF**
**SUBSTANTIALLY ALL ASSETS OF THE DEBTORS FREE AND CLEAR**
**OF LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS, (II) APPROVING**
**THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

(Related Docket No. 123)

Upon the *Debtors' Emergency Motion for Entry of Orders (A)(I) Authorizing Asset Purchase Agreement for Sale of Substantially All of Debtors' Assets (II) Approving Bidding Procedures for Sale of Debtors' Assets, (III) Approving Bid Protections, (IV) Scheduling Certain Dates With Respect Thereto, (V) Approving the Form and Manner of Notice Thereof, and (VI) Approving Contract Assumption and Assignment Procedures; (B) Approving (I) Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (II) Assumption and Assignment of Certain Contracts and Leases; and (C) Granting Related Relief* [Docket No. 48] (the "Sale Motion);[2] and the Court having entered the *Order (I) Approving Bidding Procedures for Sale of the Debtors' Assets, (II) Approving Bid Protections,*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Lifesize, Inc. (5803); SL Midco 1, LLC (6980); SL Midco 2, LLC (9192); Serenova, LLC (9208); Telstrat, LLC (5255); LO Platform Midco, Inc. (5738); Serenova WFM, Inc. (2823); and Light Blue Optics, Inc. (7669). The Debtors' service address is 216 West. Village Blvd., Suite 102, Laredo, TX 78041.

[2] Unless otherwise indicated, capitalized terms used, but not defined, herein have the meaning ascribed to them in the Sale Motion, the Bidding Procedures or the APA (each as defined herein), as applicable.

1

*(III) Scheduling Certain Dates with Respect Thereto, (IV) Approving the Form and Manner of Notice Thereof, and (V) Approving Contract Assumption and Assignment Procedures*, on June 22, 2023 [Docket No. 123] (the "Bidding Procedures Order") which, among other things, (i) authorized the Debtors to enter into an Asset Purchase Agreement with Enghouse Interactive Inc. (the "Stalking Horse Purchaser") dated May 16, 2023 (as amended or modified prior to the date hereof, the "APA") for the purchase of substantially all of the Debtors' assets (the "Stalking Horse Bid"); (ii) approved the Bid Protections; (ii) approved the form and manner of notice of the auction (the "Auction") and Sale Hearing (as defined herein); (iii) approved procedures for assuming and assigning certain executory contracts and unexpired leases (the "Assignment Procedures"); and the Debtors having solicited Bids in accordance with the bidding procedures (the "Bidding Procedures") and the Debtors having received no Qualified Bids by the Qualified Bid Deadline other than the Stalking Horse Bid; and the Debtors having selected the Stalking Horse Bid as the highest and best bid and the Stalking Horse Purchaser (the "Buyer") as the Successful Bidder for the Debtors' assets and properties identified in the APA (the "Purchased Assets") and assumption of certain liabilities of the Debtors identified in the APA (the "Assumed Liabilities") pursuant to the terms and conditions of the APA in accordance with the Bidding Procedures and the Bidding Procedures Order; and the Court having conducted and concluded a hearing on July 7, 2023 (the "Sale Hearing") to consider approval of (i) the sale of the Purchased Assets and other contracts contemplated hereunder (the "Sale") free and clear of all Liens[3] (as

---

[3] The term "Lien" as used in this Sale Order shall include, without limitation, all liens, interests, rights encumbrances, rights of offset, restrictions, leases, option rights or claims, obligations, liabilities, indentures, loan agreements, guaranties, demands, contractual commitments or interests in respect of the Debtors or any property of the Debtors, equity interests, licenses, instruments, conditional sale rights or other title retention agreements, rights of first refusal, consent rights, contract rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, regulatory violations, judgments, decrees of any court or foreign or domestic governmental or quasi-governmental entity, debts arising in any way in connection with any agreements, acts or failures to act and reclamation rights whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected including, without limitation, the following: (1) any "Lien" as such term is used in the APA;

defined herein), Claims (as defined in section 101(5) of title 11 of the United States Code (the

"Bankruptcy Code")) and other interests; and (ii) the assumption and assignment of certain

executory contracts and unexpired leases; and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the Sale and upon the record of the hearing to consider

approval of the Bidding Procedures (the "Bidding Procedures Hearing"), the Sale Hearing, the

[Declaration in Support of Sale] [Docket No •], and these chapter 11 cases (the "Chapter 11

Cases") and proceedings, and after due deliberation thereon, and good cause appearing therefor;

It is hereby **FOUND, CONCLUDED, AND DETERMINED THAT**:

A.      The findings and conclusions set forth herein constitute this Court's findings of fact

and conclusions of law with respect to approval of the APA and Sale, pursuant to Rule 7052 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these

Chapter 11 Cases pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of

law, they are adopted as such. To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

---

(2) employment or labor agreements; (3) all mortgages, deeds of trust, hypothecations, pledges, security interests or charges of any kind or nature; (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of the Debtors; (5) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including without limitations, claims that might otherwise arise under or pursuant to (a) ERISA, Pub. L. No. 93-406, 88 Stat. 829 (1974); (b) the FLSA, 29 U.S.C. §§ 201 *et seq.,* as amended; (c) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* as amended; (d) the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.,* as amended; (e) the NLRA, 29 U.S.C. §§ 151 *et seq.*, as amended; (f) the Worker Adjustment and Retraining Act of 1988, 28 U.S.C. 2101 *et seq.*; (g) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, as amended; (h) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, as amended; (i) state discrimination laws; (j) state unemployment compensation laws or any other similar state laws; or (k) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (6) any bulk sales or similar laws; (7) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (8) any theories of successor liability, including any theories on product liability grounds; and (9) any environmental or other liens, Claims, encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing Date.

C.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 Cases in this District and Court is proper under 28 U.S.C. § 1408.

D.      This order (the "Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs entry of judgment as set forth herein. Time is of the essence in consummating the sale. There is no credible basis for concluding that a delay in the sale of the Purchased Assets would result in a higher or better offer for the Purchased Assets than the offer reflected in the APA. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the APA. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

E.      The statutory bases for the relief sought in the Sale Motion are sections 105, 363, 365, and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9007, and Rule 2002-1 of the Bankruptcy Local Rules for the Bankruptcy Court for Southern District of Texas (the "Local Rules").

F.      On May 16, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate their business and manage their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

G.      As evidenced by the affidavits or certificates of service and publication previously filed with the Court, and demonstrated by the evidence and representations of counsel presented at the Bidding Procedures Hearing and the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures Hearing, the Auction, the APA, this Sale Order and the Sale Hearing has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, the Bidding Procedures Order, and Local Rule 2002-1. Such notice was good, sufficient, and appropriate under the circumstances and all of the Debtors' creditors and other parties in interest in the Chapter 11 Cases were offered a reasonable opportunity to object and be heard. No other or further notice of the Sale Motion, including without limitation, the APA, the Auction, the assumption and assignment of the Assigned Contracts and Leases or the related Cure Costs, the Sale Hearing, or of the entry of this Sale Order was or is necessary or shall be required.

H.      A Cure Notice has been provided to each of the counterparties (the "Contract Counterparties") to the contracts identified on the schedule the Debtors filed with the Court, dated [•], 2023 [Docket No. •] and attached hereto as Exhibit A (the "Assigned Contracts and Cure Schedule" and the contracts listed thereon, the "Assigned Contracts and Leases") all in accordance with the Assignment Procedures as provided by the Bidding Procedures Order.

I.      The service of the Cure Notice was sufficient under the circumstances and no further notice need be given in respect of assumption and assignment of the Assigned Contracts and Leases or the proposed cure amounts (the "Cure Amounts") related thereto, if any. The Contract Counterparties to the Assigned Contracts and Leases have had a reasonable opportunity to object to the assumption and assignment of the Assigned Contracts and Leases and the associated Cure Amounts.

J.      The disclosures made by the Debtors concerning the Sale Motion, the APA, the Sale, the Stalking Horse Purchaser, and the Sale Hearing were good, complete and adequate.

K.      A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all of the Debtors' creditors and other parties in interest in these Chapter 11 Cases.

L.      The Debtors' right, title and interest in the Purchased Assets constitutes property of the Debtors' bankruptcy estates and title thereto is vested in the Debtors' bankruptcy estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and lawful owner of the Purchased Assets.

M.      The terms contained in the APA constitute the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates for the Purchased Assets than would be provided by any other available alternative. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to assume and assign the Assigned Contracts and Leases and sell the Purchased Assets to the Buyer pursuant to the terms and conditions of the APA. Such action is an appropriate exercise of the Debtors' business judgment and is in the best interest of the Debtors, their estates, and creditors. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly given limited cash on hand and access to additional funding; (ii) the Stalking Horse Bid set forth in the APA constitutes the highest and best offer for the Purchased Assets; and (iii) the APA and the Closing will present the best opportunity to realize the value of the Debtors' business on a going concern basis and to avoid decline and devaluation of the Debtors' business. Entry of this Sale Order (and all provisions hereof) is a condition precedent to the Buyer consummating the APA.

N.      The Debtors and their professionals marketed the Purchased Assets appropriately and conducted the marketing and sale process in good faith without collusion and in accordance with the Bidding Procedures and the Bidding Procedures Order. The marketing process set forth in the Bidding Procedures Order and the Bidding Procedures was fair in substance and procedure and afforded a full and fair opportunity for any party to make a higher or otherwise better offer to purchase the Purchased Assets. Based upon the record of these proceedings, all of the Debtors' creditors, other parties in interest in these Chapter 11 Cases, and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

O.      The APA and Sale (including the assumption of the Assigned Contracts and Leases) contemplated thereby represent a fair and reasonable agreement to purchase the Purchased Assets under the circumstances of these Chapter 11 Cases. No other entity or group of entities has presented a higher or otherwise better offer to the Debtors to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Buyer. The Debtors, the Buyer, and their respective representatives have complied in all respects with the Bidding Procedures and Bidding Procedures Order.

P.      The terms and conditions of the APA, including the total consideration to be paid by the Buyer to the Debtors pursuant to the APA, are fair and reasonable, and the Sale is in the best interest of the Debtors, their creditors, and their estates. The Buyer has acted in good faith in all respects related to the negotiation of the APA. The Buyer is purchasing the Purchased Assets in good faith and is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and, therefore, is entitled to the full protections of that provision, including in the event that this Sale Order or any portions thereof is appealed, or is reversed or modified on appeal; and otherwise has proceeded in good faith in all respects in connection with the sale of the Purchased

7

Assets in that (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (iii) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iv) the negotiation and execution of the APA, including the Sale contemplated thereby, was at arms'-length, in good faith, and without collusion or fraud of any kind. The Buyer has not acted in a collusive manner with any other parties interested in the Purchased Assets.

Q.     The Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code and any other applicable bankruptcy or non-bankruptcy law with respect to the sale and assignment of the Purchased Assets and Assigned Contracts and Leases that it is acquiring pursuant to the APA.

R.     The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Debtors and the Buyer and Buyer's agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Buyer or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

S.     The consideration provided by the Buyer pursuant to the APA: (i) is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act); (ii) is fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, the Bankruptcy Code, and any other applicable laws; (iii) is reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United

States, any state, territory, or possession thereof, or the District of Columbia; and (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative. The APA was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding the Debtors' creditors under the Bankruptcy Code or under any other applicable law. Neither the Debtors nor the Buyer has entered into the APA or is consummating the Sale with any fraudulent intent or otherwise improper purpose. The Court's approval of the Sale and the APA is in the best interests of the Debtors, their estates, creditors, and all other parties in interest.

T.      The Buyer is not, and was not immediately prior to or after the Closing Date, an "affiliate" or "insider" of the Debtors as defined in section 101 of the Bankruptcy Code, and no common identity of incorporation, director, or stockholder existed between the Buyer, on the one hand, and the Debtors, on the other hand, immediately prior to or after the Closing Date. By consummating the Sale, the Buyer is not a mere continuation of the Debtors or their estates, and there is no continuity, no common identity, and no continuity of enterprise between the Buyer and the Debtors. The Buyer is not holding itself out to the public as a continuation of the Debtors. The Buyer is not a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer or the Debtors. The Buyer will not assume or in any way be responsible for any obligation or liability of the Debtors and/or the Debtors' estates except in respect of the Assumed Liabilities, and as expressly provided in this Sale Order or the APA. The Buyer would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

U.      An injunction against creditors of the Debtors and third parties pursuing Excluded Liabilities is necessary to induce the Buyers to close the Sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtors' estates, and will benefit all of the Debtors' creditors.

V.      The Buyer has acted and will be acting in good faith in its negotiations with the Debtors, submitting a bid and consummating the Sale on or after entry of this Sale Order.

W.      The Debtors, acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and the Debtors require no further consents or approvals to consummate the Sale contemplated by the APA, except as otherwise set forth in the APA.

X.      The transfer of each of the Purchased Assets to the Buyer will be as of the Closing Date (as defined in the APA) and constitutes a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all right, title, and interest of Debtors to the Purchased Assets free and clear of all Excluded Liabilities accruing, arising or relating thereto at any time prior to the Closing Date, except for Assumed Liabilities under the APA and encumbrances permitted herein or under the APA (the "Permitted Encumbrances").

Y.      The Debtors may sell the Purchased Assets free and clear of Excluded Liabilities against the Debtors, their bankruptcy estates, or any of the Purchased Assets (except for Assumed Liabilities and Permitted Encumbrances provided herein or under the APA) because, with respect to each creditor asserting a Lien, Claim or Excluded Liability, one or more of the standards set forth in sections 363(f)(1) –(5) of the Bankruptcy Code have been satisfied. Each entity with rights to assert an Excluded Liability (except for Assumed Liabilities or Permitted Encumbrances provided herein or under the APA) that is attached to the Purchased Assets to be transferred on the

10

Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale

or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable

proceeding to accept money satisfaction of such encumbrance; or (iii) otherwise falls within the

provisions of section 363(f) of the Bankruptcy Code. Those holders of Claims, Interests[4] or other

---

[4] The term "**Interest**" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Assets: liens, claims (as defined in Bankruptcy Code § 101(5)), debts (as defined in Bankruptcy Code § 101(12)), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising before or after the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to: (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, rights of first refusal (and similar provisions), restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights; (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising before or after the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 as amended, "**ERISA**")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims, including, without limitation, claims that might otherwise arise under ERISA, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, the Americans with Disabilities Act of 1990, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, state discrimination laws, state unemployment compensation laws or any other similar state laws, any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors before the Closing; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any other Excluded Liabilities under the Asset Purchase Agreement; and (xii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable federal or state securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

Excluded Liabilities against the Debtors, their bankruptcy estates, or any of the Purchased Assets who did not object, or who withdrew their objections to the Sale are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims, Interests, or other Excluded Liabilities who did object fall within one or more of the other subsections of section 363(f). Specifically, all holders of Claims, Interests or other Excluded Liabilities (except for Permitted Encumbrances, or as assumed as Assumed Liabilities, provided herein or under the APA) are adequately protected by having their Claims, Interests or other Excluded Liabilities, if any, in each instance against the Debtors, their bankruptcy estates, or any of the Purchased Assets, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an interest.

Z.      If, except with respect to Assumed Liabilities and Permitted Encumbrances provided herein or under the APA, the Sale was not free and clear of all Excluded Liabilities, or if the Buyer would, or in the future could, be liable for any of the Excluded Liabilities, the Buyer would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Debtors and their bankruptcy estates and creditors.

AA.     The Debtors have demonstrated that it is an exercise of their sound business judgment for the Debtors to assume and assign the Assigned Contracts and Leases to the Buyers pursuant to the terms of this Sale Order and the APA, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts and Leases is in the best interests of the Debtors, their bankruptcy estates and creditors, and other parties in interest. The Assigned Contracts and Leases being assigned to the Buyer under the APA are an integral part of the APA and the Sale and, accordingly, such assumptions and assignments are reasonable and enhance the value of the Debtors' bankruptcy estates. Any non-Debtor

counterparty to any Assigned Contracts and Leases that has not actually filed with the Court an objection to such assumption or assignment as of the objection deadline contained in the relevant Cure Notice is deemed to have consented to such assumption and assignment.

BB.     The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), 365(b)(1)(C), and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts and Leases and have: (i) cured any default existing prior to the date hereof under any of the Assigned Contracts and Leases, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts and Leases, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance with respect to the Assigned Contracts and Leases, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. The Assigned Contracts and Leases are assignable to the Buyer pursuant to this Sale Order notwithstanding any provisions contained therein to the contrary. No monetary or non-monetary defaults exist in the Debtors' performance under the Assigned Contracts and Leases as of the date of this Sale Order other than the failure to pay amounts equal to the Cure Costs or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

CC.     The assumption and assignment of the Assigned Contracts and Leases pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors, their estates, creditors, stakeholders and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

DD.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

EE.    The sale and assignment of the Purchased Assets and Assumed Liabilities outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization for the Debtors. The Sale does not constitute a sub rosa chapter 11 plan.

FF.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by the Buyer under the APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their bankruptcy estates, creditors, and other parties in interest in these Chapter 11 Cases, and should be approved. The Closing should occur promptly to preserve the value of the Purchased Assets and the Debtors' bankruptcy estates.

**<u>NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:</u>**

1.    The Sale of the Purchased Assets is approved.

2.    Any and all objections and responses to the Sale that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits.

3.    Notice of the Sale Motion, and the assumption and assignment of the Assigned Contracts and Leases (including proposed Cure Amounts related thereto), the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with the Bidding Procedures, sections 102(1), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007.

4.      The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

5.      The APA, including all other ancillary documents, and all of the terms and conditions thereof, and the Sale contemplated thereby, are hereby approved in all respects and the Debtors and the Buyer are hereby authorized and empowered to fully perform under, consummate, and implement the terms of the APA.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate and close the Sale pursuant to the APA; (b) transfer and assign all right, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of the APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the APA and all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including, without limitation, any other ancillary documents, bills of sale, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by this Sale Order, the APA and any such other ancillary documents, without any further corporate action or orders of this Court.

7.      The Debtors, their estates, and their respective officers, members, managers,

partners, agents, representatives, and attorneys, are authorized, subject to the terms and conditions contained in the APA and this Sale Order to carry out all of the provisions of the APA and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA and any related agreements or instruments; to take any and all actions contemplated by the APA, any related agreements or instruments, or this Sale Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, termination statements, indentures, mortgages, quitclaim deeds, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the APA, any related agreements or instruments and this Sale Order, all without further application to, or order of, this Court or further action by their respective officers, members, managers, partners, agents, representatives, and attorneys. The Debtors and their estates are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Unit (as defined in the Bankruptcy Code) any and all certificates, agreements, or amendments necessary or appropriate to effectuate this Sale Order and the APA, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as they may determine are necessary, desirable or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by the corporate laws of the State of Delaware and all other applicable business, corporation, non-profit, limited liability partnership, trust, and other laws of the applicable

Governmental Unit with respect to the implementation and consummation of the APA, any related agreements or instruments and this Sale Order.

8.      This Sale Order will be binding in all respects upon the Debtors, their Estates, all creditors, all holders of Claims and Interests (whether known or unknown) and parties otherwise asserting Excluded Liabilities against all or any portion of the Purchased Assets, all counterparties to the Assigned Contracts and Leases, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases. The terms and provisions of the APA and this Sale Order will inure to the benefit of the Debtors, their estates, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, notwithstanding any subsequent appointment or authority of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise will be binding.

**Sale and Transfer of Purchased Assets**

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to and except as otherwise set forth in the APA, the Debtors' right, title and interest in the Purchased Assets will be transferred to the Buyer free and clear of all Excluded Liabilities, if any, against the Debtors or the Purchased Assets, but in each case, except for the Assumed Liabilities and Permitted Encumbrances provided herein or under the APA, with all such Excluded Liabilities to attach to the cash proceeds of the Sale.

10.     On the Closing Date, this Sale will be construed to and will constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets

17

to the Buyer pursuant to the terms and conditions set forth in this Sale Order and the APA. For the avoidance of doubt, the Excluded Assets (as defined in the APA) set forth in the APA are not included in the Purchased Assets and such Excluded Assets shall remain property of the Debtors' estates.

11.     Subject to the terms and conditions of this Sale Order, the transfer of Purchased Assets to the Buyer pursuant to the APA and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Sale Order, constitute a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all of the Debtors' right, title, and interest in and to the Purchased Assets as set forth in this Sale Order and the APA, as applicable, free and clear of all Excluded Liabilities.

12.     The Buyer, to the extent provided by this Sale Order or the APA, will be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors constituting Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date as provided by this Sale Order and the APA. To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

13.     Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements

18

evidencing Excluded Liabilities pertaining to the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Excluded Liabilities that the person or entity has with respect to the Purchased Assets, or otherwise, then: (i) the Debtors and the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets; and (ii) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, will constitute conclusive evidence of the release of all Excluded Liabilities in relation to the Purchased Assets of any kind or nature; *provided that*, notwithstanding anything in this Sale Order or the APA to the contrary, the provisions of this Sale Order will be self-executing, and neither the Debtors nor Buyer will be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order. For the avoidance of doubt, upon consummation of the Sale, the Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 and related provisions of the Bankruptcy Code.

14.     Except for Assumed Liabilities and Permitted Encumbrances provided herein or under the APA, or to enforce the APA, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, dealers and sale representatives, and trade or other creditors holding rights to assert Excluded Liabilities of any kind or nature whatsoever against or

in the Debtors and their Estates or the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Purchased Assets or the transfer of the Purchased Assets to the Buyer, hereby are forever barred and estopped, from asserting any Excluded Liabilities of any kind or nature whatsoever arising prior to the Closing against the Buyer and its permitted successors, designees, and assigns, or property, or the Purchased Assets conveyed in accordance with the APA.

15.     Neither the purchase of the Purchased Assets by the Buyer, nor the fact that the Buyer is using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer or any of its affiliates to be deemed a successor, successor-in-interest, continuation, or substantial continuation in any respect to the Debtors' business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, COBRA Coverage, FMLA, WARN, Tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability Law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, except for Assumed Liabilities and Permitted Encumbrances provided herein or under the APA.

16.     As of and after the Closing, each of the Debtors' creditors is hereby authorized and, upon request by the Debtors or the Buyer, directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, or Interests on the Purchased Assets released in accordance with the Sale Order or the APA, which liens will attach to the proceeds of the Sale in accordance with the terms of this Sale Order.

17.     All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets are directed to surrender possession or control of the Purchased Assets to the Buyer, as applicable, on the Closing Date or at such time thereafter as the Buyer may request. Nothing herein shall prejudice the rights of the Buyer to seek turnover

20

from any and all Entities presently in possession, or on or after the Closing Date in possession, of some or all of the Purchased Assets.

18.     The sale of the Purchased Assets and the consideration provided by the Buyer under the APA are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code.

<u>**Contracts to be Assumed and Assigned**</u>

19.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtors' assumption and assignment to the Buyer, and the Buyer's assumption, on the terms set forth in this Sale Order and the APA of the Assigned Contracts and Leases, is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied; *provided, however*, that pursuant to the APA, the Buyer and the Debtors shall be permitted, subject to the terms of the APA, to modify the list of Assigned Contracts and Leases to delete any contract, lease or other agreement, in which case the deleted item shall not be deemed an Assigned Contract and Lease.

20.     The Debtors are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Buyer, effective upon the Closing Date, the Assigned Contracts and Leases and other agreements and instruments that are Purchased Assets free and clear of all Excluded Liabilities of any kind or nature whatsoever, and execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Leases to the Buyer.

21.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer will be fully and irrevocably vested in all right, title, and interest in each of the Assigned Contracts and Leases.

21

22.    The Assigned Contracts and Leases will be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms pursuant to the APA, notwithstanding any provision in any such Assigned Contracts and Leases (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

23.    Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing, Buyer, or the Estates, as applicable as provided in the APA, will pay to the respective counterparty the Cure Costs (if any) relating to any Assigned Contracts and Leases.

24.    The payment of the applicable Cure Costs (if any) will effect a cure of all defaults existing as of the date that such Assigned Contracts and Leases are assumed and compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.

25.    Upon the Closing, the Buyer will assume the Assigned Contracts and Leases, and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts and Leases will not be a default thereunder. After the payment of the applicable Cure Costs, neither the Debtors and their bankruptcy estates nor the Buyer will have any further liabilities to the non-Debtor counterparties to the Assigned Contracts and Leases, other than Buyer's obligations under the Assigned Contracts and Leases that accrue or become due and payable on or after the date that such Assigned Contracts and Leases are assumed.

26.    Except as otherwise agreed in writing between the Debtors and the non-Debtor parties to the Assigned Contracts and Leases, stated on the record of the Sale Hearing, or determined by Court order, the Cure Costs for the Assigned Contracts and Leases are hereby fixed at the amounts set forth in the Cure Notices, or this Sale Order, or as otherwise agreed in writing by the Debtors and the Buyer, and the non-Debtor parties to such Assigned Contracts and Leases

are forever bound by such Cure Costs and, upon payment of such Cure Costs, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, or the Purchased Assets with respect to any claim for cure under any of the Assigned Contracts and Leases.

27.     Any provisions, including preferential purchase or consent rights, in any Assigned Contracts and Leases that prohibit or condition the assignment of such Assigned Contracts and Leases or allow the party to such Assigned Contracts and Leases to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contracts and Leases constitute unenforceable anti-assignment provisions that are void, and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts and Leases have been satisfied.

28.     All Contract Counterparties to the Assigned Contracts and Leases must cooperate with, and expeditiously execute and deliver on, any reasonable request of the Buyer, and shall not charge the Debtors or the Buyer for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

29.     Any party having the right to consent to the assumption or assignment of any Assigned Contracts and Leases or any other agreement or instrument that is a Purchased Asset, including preferential purchase or consent rights, that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment pursuant to sections 363(f) and 365(c) of the Bankruptcy Code.

30.     Upon the Closing, the Buyer will be deemed to be substituted for the Debtor or

Debtors, as applicable, as a party to the applicable Assigned Contracts and Leases and the Debtors and their estates will be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts and Leases.

31.     The Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts and Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts and Leases have been satisfied.

32.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts and Leases are forever barred from raising or asserting against the Debtors, their estates, or the Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts and Leases, existing as of the date that such Assigned Contracts and Leases are assumed or arising by reason of or in connection with the Closing. No sections or provisions of any Assigned Contracts and Leases that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Assigned Contracts and Leases shall have any force and effect with respect to the assignments authorized by this Sale Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any of the Assigned Contracts and Leases pursuant to the terms of the APA shall in any respect constitute a default under any Assigned Contracts and Leases. The non-debtor party to each of the Assigned Contracts and Leases shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of

the Debtors' rights and benefits under each of the Assigned Contracts and Leases as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

### Additional Provisions

33.     The Debtors and the Buyer hereby waive, and will be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable. Following the Closing, no holder of any Claim or Interest, nor any Entity otherwise asserting any Excluded Liability against the Debtors and their bankruptcy estates or the Purchased Assets, shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to such Claim, Interest or other Excluded Liability or any actions that the Debtors and their bankruptcy estates may take in these Chapter 11 Cases or any successor cases.

34.     The Debtors, including their officers and agents, is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the APA and this Sale Order. The Debtors will be, and hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order. No consents or approvals, other than those expressly provided for in this Sale Order, are required for the Debtors to consummate the Sale.

35.     Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the sale of Purchased Assets contemplated by the APA and this Sale Order. This Sale Order and the APA shall govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents,

25

recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, and each such entity is hereby authorized and directed to accept this Sale Order for recordation as conclusive evidence of the free, clear, and unencumbered transfer of title to the Purchased Assets conveyed to Buyer pursuant to the APA.

36.     The Sale is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale will not affect the validity of the Sale, including the assumption and assignment of the Assigned Contracts and Leases by the Buyer and the sale free and clear of all Excluded Liabilities, unless such authorization and consummation of such Sale are duly stayed pending such appeal. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

37.     As a good-faith purchaser of the Purchased Assets, the Buyer has complied with the Bidding Procedures Order and has not colluded with any of the other bidders, potential bidders, or any other parties interested in purchasing the Purchased Assets, and, therefore, the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

38.     Except for Assumed Liabilities and Permitted Encumbrances provided herein or under the APA, all persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt holders, equity holders, administrative agencies, Governmental Units, tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, and other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors holding or asserting Liens, Claims, or Excluded

Liabilities of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Buyer or any of its affiliates, predecessors, successors, or assigns or any of their respective current and former members, managers, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Purchased Assets in respect of Liens, Claims or Excluded Liabilities that arise under or out of, in connection with, or in any way relate to, the Debtors, the Purchased Assets, the Assigned Contracts and Leases, the operation of the Debtors' business on or prior to the Closing Date, the sale, or the transfer of the Purchased Assets or the Assumed Contracts and Leases to the Buyer. Actions that are barred include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or enforcement of any Lien, Claim, Interest, or encumbrance, except for Assumed Liabilities or Permitted Encumbrances provided herein or under the APA, (iv) the assertion of any right of setoff, not asserted prepetition, or subrogation claims against the Buyer, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Sale Order, any actions contemplated or taken in respect hereof, or the APA, and (vi) the revocation, termination or failure or refusal to renew any governmental

27

authorization or to acknowledge/accept assignment of any license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with such Purchased Assets; *provided*, *that*, for the avoidance of doubt, nothing in this paragraph shall limit the enforcement of the APA or rights in connection with Assumed Liabilities or Permitted Encumbrances. Following the Closing Date, no holder of a Lien on, in or against the Purchased Assets shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, or any actions that the Debtors may take in the Debtors' cases.

39.     Without limiting the generality of the foregoing, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtors arising pursuant to state law or otherwise. This Sale Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation claims filed or to be filed, or reopenings of those claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

40.     The Buyers and its affiliates shall have no liability, obligation, or responsibility under WARN, or any foreign, federal, state or local labor or employment law by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities. The Buyer

and its affiliates shall have no liability, obligation, or responsibility under CERCLA, or any foreign, federal, state or local environmental law by virtue of the Buyer's purchase of the Purchased Assets, in each case other than those that are expressly included in the Assumed Liabilities.

41.     The mere failure to specifically include any particular provisions of the APA, including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order will not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the APA and each document, agreement or instrument be authorized and approved in its entirety, *provided, however*, to the extent there are any inconsistencies between the terms of this Sale Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order control.

42.     Subject to the terms of the APA, the APA and any related agreements, rights and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and the Buyer, without further action or order of this Court; *provided*, *however*, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors.

43.     All time periods set forth in this Sale Order will be calculated in accordance with Bankruptcy Rule 9006(a).

44.     The failure specifically to include or mention any particular provision of the APA in this Sale Order does not diminish or impair the effectiveness of such provision. The Court, the Debtors, and the Buyer intend that this Sale Order authorize and approve the entirety of, and each provision of, the APA and any amendments to it. All provisions of this Sale Order are non-severable and mutually dependent.

45.     The failure of the Debtors or the Buyer at any time to enforce one or more terms or

conditions of any Assigned Contracts and Leases shall not constitute a waiver of any such terms or conditions, or of the Debtors' or the Buyer's rights to enforce every term and condition of the Assigned Contracts and Leases.

46.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Sale Order will not be stayed after the entry hereof, but will be effective and enforceable immediately upon entry, and the fourteen day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and will not apply.

47.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the APA and the provisions of this Sale Order, and the stay imposed by Bankruptcy Rule 4001(a)(3) is hereby waived with respect thereto.

48.     Nothing contained in any chapter 11 plan confirmed in the Debtors' Chapter 11 Cases or any order confirming any such plan or any other order in the Debtors' Chapter 11 Cases (including any order entered after any conversion of these Chapter 11 Cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the APA or this Sale Order and, to the extent of any such conflict, the terms of this Sale Order and the APA shall control.

49.     Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Bidding Procedures Order or any other prior order or pleading in these Chapter 11 Cases, or the terms of the APA (including all ancillary documents executed in connection with such agreements), this Sale Order shall govern.

50.     This Court will retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any

waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Order.

Dated: _____, 2023

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE