IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LIFESIZE, INC. *et al.*, | Case No. 23-50038 (DRJ) |
| Debtors.[1] | (Jointly Administered) |

## DECLARATION OF MICHAEL YOSHIMURA
## IN SUPPORT OF DEBTORS' OMNIBUS MOTION

Under 28 U.S.C. § 1746, Michael Yoshimura declares under penalty of perjury:

1. I am a Senior Director with FTI Consulting, Inc. ("**FTI**"), which has a place of business at 1111 Third Avenue, 12th Floor, Seattle, WA 98101, among other locations.

2. I submit this declaration in my capacity as Co-CRO for the Debtors in support of the *Debtors' Omnibus Motion for Relief and To Convert Cases to Chapter 7* (the "**Omnibus Motion**"), filed contemporaneously with this declaration. The contents of this declaration are derived directly from my personal knowledge acquired in the ordinary course of my role as Co-CRO for the Debtors, as I am principally responsible for the management of the Debtors' remaining cash assets following the Sale.[2] I am competent and willing to testify to the facts contained in this declaration if called to do so.

3. The DIP Financing Order authorized the Debtors to borrow up to $5,000,000 from SVB, the Debtors' prepetition senior-secured lender under terms that "rolled up" prepetition secured debt 3-to-1, such that, immediately before the Sale, SVB was owed $20,000,000 plus

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of their federal tax identification numbers are: Lifesize, Inc. (5803); SL Midco 1, LLC (6980), SL Midco 2, LLC (9192); Serenova, LLC (9208); Telstrat, LLC (5255); LO Platform Midco, Inc. (5738); Serenova WFM, Inc. (2823); and Light Blue Optics, Inc. (7669). The Debtors' service address is 216 West Village Blvd., Suite 102, Laredo, TX 78041.

[2] Capitalized but undefined terms used in this declaration are defined in the Omnibus Motion.

accrued and unpaid interest and fees under the DIP Facility. Contemporaneously with the Sale closing and consistent with paragraph J of the DIP Financing Order, $14,000,000 in Sale proceeds were remitted to SVB in partial satisfaction of the principal amounts owing under the DIP Facility, plus approximately $300,000 in accrued interest and fees. In the weeks since the Sale closing, the Debtors have made additional principal prepayments against the DIP Facility of $2,500,000. The Debtors have also paid SVB's monthly attorney fees as required under the DIP Facility.

4. Presently, SVB is owed approximately $3,500,000 in principal, plus accrued interest and unpaid fees under the DIP Facility. In connection with its approval of the current DIP Budget, SVB has agreed accept no less than $18,100,000 in total payments under the DIP Facility, meaning that the Debtors are required to remit at least $1,500,000 to SVB from the estate before any remaining administrative expenses not otherwise provided for in the DIP budget are paid.

5. The Debtors remain indebted to the ERC Lenders under the Sponsor Credit Agreement in original principal amount of $4,000,000 (only $2,000,000 was ultimately advanced), secured by the ERC Proceeds. No post-petition payments on account of the Sponsor Credit Agreement have been made and, presently, the Debtors owe approximately $660,000 (principal and interest) to the ERC Lenders. The ERC Lenders are oversecured, since they are owed approximately $660,000 and secured by ERC Proceeds of at least $2.8 million.

6. In connection with the Sale, Enghouse offered employment to the majority of the Debtors' employees. Fifteen of the Debtors' employees were not offered employment and are beneficiaries of the Debtor's long-standing prepetition severance program first instituted by Craig Malloy (now the Committee's chair) when he was Lifesize's CEO. Severance is calculated as a minimum two weeks and then one extra week for every year of additional service starting in year three and beyond. None of the 15 employees eligible for severance pay is an insider or officer of

the Debtors. With two exceptions noted immediately below, the severance amounts owing to each employee is modest, between a low of $1,600 and a high of $13,385. One employee had a long tenure with the Debtors—more than 17 years—so that employee's severance amount (based on 17.2 weeks) is $44,154. Finally, the Debtors' senior-most accounting employee is entitled to a severance amount—arising under that employee's employment agreement rather than the Debtors' severance program—of six months' salary, equal to $125,000.[3]

7. The total amount of the Severance is $248,026. All but three of these employees were terminated as of August 1, 2023, and have been awaiting payment of their severance amounts since then. Two of the remaining three employees have ended their non-employee contracted-for service to the estates. The final employee continues to provide service to the Debtors as non-employee contractors to assist in the winding up of these Cases.

8. The funds the Debtors would use to pay the Severance constitute proceeds of SVB's post-petition collateral under the DIP Financing Order and, for its part, SVB has indicated its willingness to permit the Debtors to pay the Severance if SVB obtains its agreed recovery from its collateral (including the ERC Proceeds) of at least $18,100,000. The estates retain sufficient cash (once the ERC Proceeds are received) to pay: (a) all allowed administrative expense claims, including all professional fees through the date of conversion in the requested amounts and all US Trustee fees; (b) at least $1.5 million to SVB to bring SVB's recovery on the DIP Loan to $18.1 million; (c) the amount owed to the ERC Lenders under the Sponsor Credit Agreement; and (d)

---

[3] This employee also received a retention bonus under the KERP approved by the Court in the *Order Authorizing and Approving the Debtors' Motion for Entry of an Order (I) Authorizing and Approving a Non-Insider Key Employee Retention Plan and (II) Granting Related Relief* [Docket No. 120]. This employee was absolutely critical to the successful prosecution of these Cases and the completion of the Sale. Since the Sale, this employee has been providing critical services to the Debtors on a contract basis without which the Debtors would have been unable to complete the Chapter 11 administration of these Cases. Four other employees of the 15 subject to this Motion were also beneficiaries of the KERP.

the Severance. Even with these payments, the estates will have additional funds (that is, products of the DIP Loan collateral) of approximately $600,000 remaining for additional remittance to SVB.

9. The following chart shows the current projection of sources and uses of cash available in the Debtors' estates as of the date of the Omnibus Motion:

Lifesize, Inc.
Estimated Cash in Estates
($ in 000s)

| | | |
|---|---:|---|
| 9/29/2023 Ending Cash | 1,224 | |
| *Less: ordinary course admin claims* | (193) | General trade and contractors |
| Cash Available for Distribution | 1,031 | |
| *Add: ERC Proceeds* | 2,795 | |
| *Less: ERC Lender repayment* | (660) | |
| *Less: Payment to SVB for $18.1M minimum* | (1,600) | SVB has received $16.5M to date |
| *Less: Professional fees not escrowed* | (467) | |
| *Less: Severance* | (248) | |
| *Less: UST fees* | (180) | |
| **Remaining Cash** | **671** | |

10. Because the Debtors ceased all business operations immediately on the closing of the Sale, the Rejected Contracts are entirely useless to the Debtors or the estates and provide no continuing benefit to the estates. Rather, the Rejected Contracts represent only a burden on the Debtors' estates. Even if some benefit were to be derived from the Rejected Contracts, the Debtors no longer have any operational employees or businesses to perform under the Rejected Contracts.

11. Accordingly, and for the foregoing reasons, I believe that the Court should enter an order approving the relief requested in the Omnibus Motion.

Dated: October 6, 2023

                                                    /s/ Michael Yoshimura
                                                  Michael Yoshimura